## TIMOTHY OLCOTT v. REUBEN B. DUNKLEE.

In an indenture, each covenant is to be considered as the covenant of the party who is to perform it, and as being his language. The signature of the other party only indicates his acceptance of the covenant, in the terms in which it is made.

Where the plaintiff and defendant executed an indenture, which purported to be a lease of certain premises, from the defendant to the plaintiff, during the joint lives of the plaintiff and his wife, and the life of the survivor of them, and by the terms of which the defendant was to retain possession of the premises during the term, and covenanted that he would furnish and deliver to the plaintiff certain articles of produce, &c., every year, and would keep a suitable horse, &c., for the use of the plaintiff and his wife, and perform other specified services towards the maintenance of the plaintiff and his wife, and the defendant failed to perform some of the covenants on his part, it was held that the plaintiff might maintain ejectment against him, without giving notice to quit.

It was further held that such instrument conveyed to the plaintiff an estate of freehold, but not of inheritance,—the reversion of which remained in the defendant; that the defendant's right of occupancy could only be considered as incident to the performance of his covenants; and that the giving him such right of occupancy did not operate as a surrender of the plaintiff's estate.

A court of law have no power, in such case, to allow the defendant time to redeem.

EJECTMENT. Plea, the general issue, and trial by the jury.

The plaintiff, to support his title to the premises demanded, offered in evidence the indenture, dated Oct. 14, 1837, signed by himself and the defendant, the terms and conditions of which are fully set forth in the opinion of the court; the defendant objected to its admission, but the court overruled the objection. The plaintiff also gave evidence tending to prove that the defendant, during the summer of 1839, failed to keep a suitable and proper horse for the use of the plaintiff, as stipulated in said indenture. This was all the evidence introduced by the plaintiff.

The defendant requested the court to charge the jury that he was entitled to six months notice to quit, prior to the commencement of

Olcott v. Dunklee.

this action ; but the court refused to comply with said request, but did, in substance, charge the jury, that, if they found that the defendant neglected to keep a suitable horse for the use of the plaintiff, as required by the indenture, the plaintiff was entitled to recover.

After verdict and judgment for the plaintiff, the defendant filed his motion to redeem, which was overruled and disallowed by the court. Exceptions by the defendant.

*D. Kellogg* and *N. Richardson* for defendant.

1. The legal operation of the indenture is, a lease by Dunklee to Olcott for life, and a succeeding surrender by Olcott to Dunklee of his whole term, taking therefor the covenants of Dunklee to perform certain services, &c.; and this is witnessed by the same instrument. Dyer 6. Plowden 540. No particular terms are necessary to make a surrender. It is sufficient that there be words and deeds sufficient to make the mind of the surrenderor to appear, that he is willing and desirous to part with and yield up the thing surrendered into the hands of the surrenderee. Shep. Touch., ch. 17, 305. And, therefore, if lessee for life, or years, do by word or writing say that he wishes him in reversion to enter, and that it is his desire, or he is content, that he shall have his estate, or have his lease, it will be a good surrender. Shep. Touch., ch. 17, 306.

The present instrument being an indenture, and therefore *every word thereof spoken by both parties*, it is clear therefrom that it was the intention of Olcott, the tenant, that Dunklee, the immediate reversioner, should go into possession of the whole premises, and should occupy the same yearly and every year during the term, which is equivalent to the whole term. Plowden 422. 6 Coke 72. And if no other intention of Olcott can be so well made to comport with all the words of the instrument, then this shall prevail, *ut res magis valeat.* Plowden 160. Co. Lit. 313 *a.* Ib.'183 *b.* *Bredon's Case,* 1 Co. Rep. 77. Ib. 174, 176.

That such possession, to be taken by Dunklee, was contemplated by the parties, appears from the covenants. For, 1, He covenanted that he should, at his own expense, *occupy, husband, farm,* and carry on the premises. This he could not do, unless entitled to the possession. 2. That he would, " from the *avails* and *income* of the

*farm,* provide and deliver the maintenance, articles, privileges and services thereinafter expressed." 3. That he would *permit* Olcott and his wife to use and occupy the house on the premises. All these clauses require a surrender to be implied. To this possession by Dunklee there are no words of limitation, or condition, ( which, going to the defeating the estate, are to be taken strictly,) in the instrument,—his mere undertaking to pay certain rents, or render certain services, not being such. 2 Mod. 35. Vaughan 32. T. Jones 206.

On the other hand, if the instrument is a lease to Olcott merely, then Dunklee, who went into possession for the purpose of "occupying yearly and every year," must be considered at least as holding from year to year, and entitled to notice to quit. He is also entitled to notice on another ground; for, as the plaintiff held his covenant to do certain things out of the profits of the land, he was entitled to take those profits, until the plaintiff, by notice, should at least discharge him therefrom.

It is therefore contended that the instrument, after it was perfected by the delivery and taking possession, operated as a surrender for the whole term; because a demise yearly and every year during so many years is an actual surrender for the whole years; Shep. Touch. 270; and, therefore, on mere non-performance of the covenants the plaintiff was not entitled to bring ejectment;—and, on the other construction, he could not do it, until he had given the defendant notice to quit. Again, when a lease contains a covenant for payment of rent, but no clause of re-entry, the landlord cannot bring ejectment. *Jackson* v. *Hogeboom,* 11 Johns. 163.

2. The defendant insists that the instrument was neither a *legal* nor an *equitable* mortgage. 1. It is not a legal mortgage,—for there are no conditions, or limitations, annexed to it. 2. But if it is a legal mortgage, then the defendant is entitled to redeem. 3. If it is simply an *equitable* mortgage, it will not sustain ejectment.

*T. Hutchinson* and *Tracy & Converse* for plaintiff.

The only questions in this case are such as arise upon the construction to be given to the written instrument; and we insist,

I. That it conveyed to Olcott a life estate in the premises.

1. Because it contains, not only the requisites for a perfect grant of an estate for life, but is in form one.

Olcott v. Dunklee.

2. Because it is perfectly clear, from the instrument itself, that such was the intent of the parties in making it.

II. That no surrender of the estate is made by the instrument itself.

1. Because the terms of the instrument do not imply a surrender. It is readily conceded that no particular words are necessary to make a surrender ; but the words must be such as to imply a wish, or at least a willingness, to surrender, not merely the possession, but the estate also. Co. Lit., Book 1, ch. 6, § 56. Shep. Touch. 300, 306, 307.

2. Because it is apparent from the whole instrument, taken together, that the parties did not so intend ; and the intent of the parties must govern. 1 Plowd. 159, 160. 2 Ib. 540. Co. Lit., Book 3, ch. 10, § 560. Shep. Touch. 101, 307. *Jackson* v. *Beach,* 1 Johns. Cas. 399. *Jackson* v. *Myers,* 3 Johns. 388.

3. Because such a construction would render the instrument absurd, and leave it a mere set of unmeaning covenants.

4. Because all the stipulations and covenants in the instrument are in fact the stipulations and covenants of Dunklee alone,—and, although in form the deed of Olcott, still it is not in reality such, and should not be so construed. 1 Dyer 6 *a.*

III. That it gives to Dunklee no right of possession, except as incident to and dependant upon the performance of his covenants ; and did not give him such a right as would entitle him to notice to quit.

1. Because the covenants, or after stipulations in the deed, are all the covenants, or stipulations, of Dunklee, and neither limit, nor render conditional, the estate, nor do they reserve to Dunklee any interest therein, but are additional to it. In other words, Dunklee not only grants to Olcott an estate for life, but undertakes to perform for him certain services in relation to it.

2. Because any other construction would defeat the obvious intent of the parties. If it be said that the possession in Dunklee was necessary to the performance of his covenants, we answer, that, so long as he continued to perform them, or performance was exacted, he was entitled to it as incident to the performance, and no longer. These covenants, being the covenants of Dunklee, are to be taken most strongly against him, and are not to be so construed as to give

61

them the effect of similar covenants by Olcott.    But we insist, that, even if they were the covenants of Olcott, no other construction could reasonably be given them, than that Dunklee was to have the possession, so long as he fulfilled the covenants, as such a construction alone would carry out the obvious intent of the parties.

IV.    That this is not a mortgage, within the provisions of the statute, and therefore the defendant is not entitled to redeem at law.    Rev. St., c. 35, §§ 7, 8.

The opinion of the court was delivered by

WILLIAMS, CH. J.    This is an action of ejectment.    A verdict and judgment were rendered for the plaintiff in the county court, and the defendant filed a motion to redeem, which was overruled. The plaintiff's title accrued from an indenture between him and the defendant, dated October 14, 1837, and it becomes necessary for us to decide what estate, or right, each of the parties had by virtue of that indenture, since the estate, rights and duties of both were derived from it.    It is our duty to give such a construction to it, as will give effect to the whole and every part, if it can be done by legal principles.    Whatever obligations devolved on either, by the covenants therein contained, are to be taken favorably for the party to whom the obligation is to be performed.    And we should not give it such a construction, if it can be avoided, as to make the different parts of the instrument at war with each other.    The intent is to be sought for from the instrument itself; and though we may conjecture the meaning of the parties *aliunde*, yet, if they have not made use of proper and appropriate terms to express that meaning, the court cannot supply them.

1.    By this instrument Dunklee, the defendant, conveyed to the plaintiff, Olcott, an estate for the joint lives of himself and his wife, and the life of the survivor of them.    This gave the plaintiff and his wife an estate of freehold, though not of inheritance, the reversion of which remained in the defendant.    The expressed consideration of this conveyance was two thousand dollars.

2.    He stipulated that he would, at his own expense, labor, carry on, occupy, husband and farm the same, and every part thereof, without sale or transfer during the term.

3.    That he would, from the *avails* and *income* of the farm, pro-

vide and deliver to the plaintiff three hundred pounds of pork, two hundred pounds of beef, &c. If any of the articles were more than sufficient for the support of the plaintiff and his wife one year, it was agreed that the overplus should be returned, or accounted for the next year;—and if the wife should survive, one half was to be delivered to her.

4. The defendant, Dunklee, was to keep two cows and ten sheep summer and winter, their calves and lambs, and to keep the number good; he was also to keep a one horse wagon, and cutter, &c.,—but was to have the privilege of using them in his family and business, when not wanted by the plaintiff,—cows, sheep, furniture, &c., to be the property of the plaintiff and his wife during their lives, and at their decease to revert to and become the property of the defendant; and if the plaintiff should see fit to dispose of the horse, the defendant was to keep one of his own for the use of the plaintiff.

5. In consideration of receiving certain stock, &c., of the plaintiff and one Ober, the defendant agreed to pay the plaintiff's debts.

6. There was a provision that the defendant should furnish the plaintiff with spending money, doctoring, nursing, &c.

7. The defendant covenanted that the plaintiff and his wife might live in and occupy the house, in which *they then lived,* during the term, and that he would furnish them with wood cut for the fire. It is not stated where the house was situated, — whether on the farm or not. It probably belonged to the defendant, or the stipulation was unnecessary.

8. If the plaintiff and his wife should relinquish the several articles of produce, to be furnished by the defendant, and become unable to do their own labor, the defendant was to support, take charge of, and maintain them.

It is to be noticed that all the direct covenants are on the part of the defendant, excepting that wherein the plaintiff agrees to return the overplus of the produce furnished, if not all used, and that wherein he agreed to let the defendant have the use of the horse and wagon, &c. These are the principal parts of the indenture, which require our attention. In a deed of indenture, signed by different parties, each is to be considered as only the covenant of the person who is to perform the obligation, and his language, and cannot, in

any view, be deemed or treated as the words of the other party. The signature of the other parties only indicates their acceptance of the covenant, in the terms in which it is made.

There is no difficulty in this case in discovering what the parties intended. Whether they have effected that intention is more questionable. If we call the estate of the plaintiff a mortgage, there is wanting those terms by which such an estate is usually created,— as, *upon condition, provided,* &c. If we call the estate of the defendant that of a lessee, there is also wanting those terms of art, by which estates of that kind are demised; and, moreover, there is no clause of re-entry, without which an ejectment cannot be maintained by the lessor. Without such a right in the plaintiff, and if he has no other security, or remedy, except an action upon the covenants, the grant of the estate from the defendant to the plaintiff is inoperative, and of no avail, and should not have been inserted in the indenture.

To obviate these apparent difficulties, the defendant contends, that, the defendant owning the estate of inheritance, the life estate of the plaintiff is surrendered by the indenture to the defendant. The effect of this construction would be to declare that the very instrument, which created and gave to the plaintiff an estate of freehold for the joint lives of himself and wife, destroyed that very estate. This clearly could not be its legal effect. All these objections, however, are not insurmountable. The plaintiff acquired by the indenture an estate for life. The defendant, as incident to his covenants, and to enable him to perform the same, had a right to the occupancy of the premises ; since, without such occupancy, he could not perform them.

It may be considered, then, either that the defendant granted to the plaintiff an estate for the lives of himself and wife, conditioned that he should perform the covenants, and that the indenture was *quasi* a mortgage, and that, although the words *upon condition* are not inserted, yet, in order to effect the intention of the parties, those words may be understood,—in which case the defendant would be entitled to retain the possession until condition broken,—that is, so long as he performed the covenants ; — or it may be considered that the plaintiff, having an estate for life in the premises, yielded the possession to the defendant, as incident to his covenants and to enable

him to perform them,—the right of occupancy, for that purpose only, to be held by the defendant so long as he continued to perform the stipulations on his part, and to cease when he neglected and refused to perform the same. In either of these views the plaintiff could maintain the action of ejectment, without giving any notice to quit, on the failure of the defendant to provide for him as he covenanted to do. The plaintiff, therefore, was entitled to a verdict and judgment.

The next question, which arises, is, whether the defendant was entitled to redeem. The statute upon this subject is, that, if the plaintiff claims by any deed of mortgage, or deed of bargain and sale with defeasance, the condition of which has not been performed, the defendant may file his motion to redeem, &c., and the court shall ascertain the sum equitably due, and, if a part is not due, may permit a redemption at any future period, or periods, by instalments. This statute, it has been decided, applies only to a technical mortgage, — *Miller* v. *Hamblet*, 11 Vt. 499, — and when the court, from want of equitable powers, cannot ascertain the sum, or give effect to the statute, they ought not to attempt it, at the hazard of doing injustice.

In neither of the views, which have been entertained of the nature and effect of the indenture, can the court entertain the motion to redeem; and though a compensation for past support might be ascertained and fixed in a court of equity, — as was done in *Austin* v. *Austin et al.,* 9 Vt. 420,—yet even the powers of a court of equity would be baffled, in endeavoring to ascertain what would be the future annual value of the services required of the defendant by the indenture; and clearly a court of law have no such power.

If the defendant can relieve himself from the consequences of a forfeiture for not performing his covenants, and regain the possession, he must resort to a court of equity. He is not entitled to any redemption at law, under the statute. The judgment of the county court is therefore affirmed.