LUTHER ADAMS *v.* REUBEN B. DUNKLEE,
and
BENJAMIN B. SARGEANT *v.* LUTHER ADAMS AND SIMEON SHERWIN.

Where A. conveyed to B. certain premises for the life of B. and his wife, reserving to himself the right to possess and cultivate the premises for the purpose of enabling him to perform certain covenants upon his part for the support of B. and his wife, and B. subsequently recovered judgment in an action of ejectment against A. for a breach of those covenants, upon which no writ of possession was taken out, it was held, that the judgment terminated A's right to the possession of the premises, and that, if he still undertook to manage the farm, directly, or indirectly, without some new license, he did so as a wrong doer, and acquired thereby no right to the crops raised upon the farm, as against B., or the holder of B's title.

And the granting part, or premises, of the deed having conveyed the farm to B. " for and during his natural life and the life " of his wife, the *habendum* being to B. *and his wife*, naming her, it was held, that the wife did not take an estate in remainder, after the death of B., but that the entire estate vested in B. for his own life and that of his wife, and that, upon his decease, his administrator became the trustee and holder of the title, for the benefit of the wife.

No one can take an immediate and present estate under a deed, who is not named as a grantee in the premises, or granting part, of the deed, provided any one is there named ; if no one is there named, the grantee may be ascertained from other parts of the deed.

And it is not unusual for the premises to give the quantity of estate granted ; and when this is done, the grantee named in the premises at once takes the entire estate described ; and any limitation in the *habendum*, designed to abridge, or lessen, such estate of the immediate grantee, in favor of a party not named in the premises, will be treated as repugnant and inoperative.

And judgment, in this case, having been recovered by B., in his life time, against A., in an action of ejectment, for a breach by A. of certain conditions under which he was to retain the possession of the farm, and A. having subsequently assumed to manage and cultivate the farm, it was held, that A. acquired no title or attachable interest in the crops thus raised by him upon the farm, and that the administrator of B. might maintain replevin against A. for the crops thus raised, and that an officer, who had attached the crops as the property of A., could not sustain trover against the administrator of B. for taking and carrying away the crops by virtue of his writ of replevin.

THE case of *Adams* v. *Dunklee* was replevin for a quantity of rye and oats in the straw and corn in the stalk. Plea, not guilty, and trial by the jury, March Term, 1845,—HEBARD, J., presiding.

On trial the plaintiff gave in evidence an indenture, executed by the defendant and Timothy Olcott, by which the defendant leased to Olcott, " for and during his natural life and the life of Hannah Olcott, his wife," a certain farm in Chester, reserving the right to occupy and improve the same, for the purpose of enabling him to perform certain covenants upon his part, contained in the indenture, for the support of Olcott and his wife; and the *habendum* was in these words:—" To have and to hold the above described premises, with the appurtenances, to them, the said Timothy Olcott and Hannah Olcott, for and during their and each of their natural life, to their use and benefit during said term."

The plaintiff also proved the following facts. At the February Term of the supreme court in Windsor county, in 1844, Olcott recovered judgment against Dunklee in an action of ejectment, for a breach of the covenants for support contained in the indenture. On the thirtieth day of March, 1844, Olcott deceased, leaving a will, in which one Edson was appointed executor. Afterwards, Edson having declined the trust, Adams, the plaintiff in the replevin, was appointed administrator with the will annexed. At the time of recovering the judgment in the action of ejectment both Olcott and Dunklee resided upon the farm, and Dunklee and the widow of Olcott continued to reside there at the time these suits were commenced; and no writ of possession had ever been taken out upon the judgment; but the costs had been paid by Dunklee. The property replevied was raised upon the farm by one Daniel Davis, in the summer of 1844, under an agreement with Dunklee, by which the produce was to be divided between them. Edson informed Davis, after the decease of Olcott, and before he declined to act as executor, that, if he occupied the farm, it must be as tenant to Edson.

It also appeared, that the property in question had been attached by one Sargeant, a constable, as the property of Dunklee, by leaving a copy at the town clerk's office; and the second case above named,—*Sargeant* v. *Adams & Sherwin,*—was trover for the same property, brought by the constable, the alleged conversion being the taking of the property by virtue of the writ of replevin, which was

served by Sherwin. This suit, also, was tried by jury upon the general issue, March Term, 1845,—HEBARD, J., presiding,—and the same facts appeared, as to the title of Adams to the property, as were shown in the action of replevin.

The court directed the jury to return a verdict for the defendant in the action of replevin, and for the plaintiff in the action of trover. Exceptions were taken to the decision in both cases; and the two cases were heard together in the supreme court.

*L. Adams* for the plaintiff in the action of replevin, and for the defendants in the action of trover.

The legal title to the farm, on which the grain was raised, was in the administrator of Olcott, together with the right of immediate possession. For the title, which Olcott recovered in the action of ejectment, did not end at his death, but remained as security for all damages sustained by reason of the neglect of Dunklee to fulfil the covenants in the indenture.

The construction given to the indenture and the judgment in ejectment by the court below,—which was, that Olcott's title ended at his death and thereby Dunklee was in as of his former right,— is directly in conflict with well settled general principles; such as that a person, not named in the premises of a deed, cannot take by the *habendum*. *Doe d. Timmis* v. *Steele et al.*, 4 Ad. & El. [45 E. C. L.] 663, explaining *Spyve* v. *Topham*, 3 East 115. 2 Bac. Ab. 494, 498. *Chamberlain* v. *Crane*, 1 N. H. 64. 12 E. C. L. 359. The whole estate is given to Olcott in the premises, not only for his own life, but for the life of his wife; his wife did not sign the deed; and the attempted covenants to her are absolutely void. 1 Chit. Pl. 3, 4, and note (*g.*) *How* v. *How*, 1 N. H. 49.

If we are correct in our first position, it follows, that Dunklee must be regarded as a trespasser in remaining on the farm. Gilb. Ev. 242. 2 Bl. Com. 146, note (*m.*) 1 Price 50. *Green* v. *Biddle*, 5 U. S. Cond. R. 384. 10 Vt. 504. *Birch* v. *Wright*, 1 T. R. 373. 1 Chit. Pr. 92, 161, 258, 752. 4 Vt. 327. 2 Kent 361, 362. *Taunton* v. *Costar*, 7 T. R. 431. *Bridges* v. *Smyth*, 15 E. C. L. 481. *Upton* v. *Witherwick*, 11 E. C. L. 8. 1 Cov. & H. Dig. 466. 1 Hilliard 9, 189. 3 Cruise 431. The produce of the farm never vested in Dunklee; but the legal title was to remain in Olcott during the continuance of the life estate.

Adams *v.* Dunklee.   Sargeant *v.* Adams et al.

*N. Richardson* and *J. Barrett* for defendant in replevin and plaintiff in the action of trover.

1. The administrator, if he took any interest in the land, had no right to seize the crops which Dunklee had raised upon it; they were raised by him in good faith; Olcott had permitted him to go on, under their contract, after the recovery in ejectment, and he was, at least, such a tenant, as to be entitled to the crops.

2. The administrator took no estate or interest in the real estate. In the ejectment Olcott recovered according to his right; Rev. St. c. 35, § 6; his right was a contingent life estate; *Olcott* v. *Dunklee*, 16 Vt. 478; and after his decease, his wife, Hannah Olcott, took by remainder in her own right. 1 Shep. Touch. 75, 76. *Spyve* v. *Topham*, 3 East 115. Cro. Jac. 372, 563, 564. Co. Lit. 7 *a*, and note 33. Vin. Ab. F, 52, 53. 4 Com. Dig. 168. Dunklee remained in possession, furnishing the support for Mrs. Olcott, and is in under the contract with her, and is the owner of the property attached.

The opinion of the court was delivered by

Royce, Ch. J. The case of *Adams* v. *Dunklee* was replevin for a quantity of rye and oats in the straw,— and that of *Sargeant* v. *Adams* and *Sherwin* was trover for the same property. Sargeant, as an officer, had attached it on several writs of attachment against Dunklee, and the conversion complained of was the subsequent taking under the writ of replevin, which was served by Sherwin.

The action of replevin was prosecuted to a trial, and terminated in a judgment in favor of Dunklee, on the ground that Adams, the plaintiff therein, did not own the property replevied. The action of trover also terminated in a judgment in favor of Sargeant. Exceptions were taken in both cases, and they are now submitted together.

In reference to the action of replevin it is sufficient to remark, that it was brought and prosecuted as an adversary suit, founded on an alleged right of property in Adams. That right was negatived by the judgment of the county court, and no question is reserved in the case, except the question of property in Adams. That question is alike decisive of both cases.

The controversy in these suits has grown out of the different

49

constructions, which the parties have given to a certain life-lease executed by Dunklee to one Timothy Olcott, who is now dead, and whom Adams represents, as administrator. That instrument was the subject of protracted litigation between Olcott, in his lifetime, and Dunklee, as to their respective rights and estates under it. And it was finally settled, that, while Olcott took and retained a freehold, or life estate, Dunklee had only a right of possession, as incident to his covenants to manage and carry on the farm, and furnish the stipulated support to Olcott and his wife from the avails of the farm. His right so to occupy and possess was regarded simply as the means of enabling him to perform his covenants. And hence it was considered, that, when he violated his covenants touching the support, his right to occupy and possess was *ipso facto* determined. Olcott was accordingly allowed to recover the farm in an action of ejectment against Dunklee. See *Olcott* v. *Dunklee*, 16 Vt. 478.

The crops claimed in these conflicting suits were raised upon the farm by one Davis, after final judgment in the action of ejectment, (upon which judgment no writ of possession was ever issued,) and after the death of Olcott. Davis had been told by Edson, the person named as executor in Olcott's will, that if he cultivated any part of the farm, he must do so as a tenant under him. Edson soon afterwards declined to accept the office of executor, and Adams was appointed administrator with the will annexed. But in the mean time Dunklee contracted with Davis to cultivate a portion of the farm upon shares under him, and Davis accordingly proceeded to raise the crops now in question.

Upon the foregoing facts the question arises, whether Dunklee acquired any interest in these crops, as against Adams, the administrator. The judgment in ejectment had already terminated Dunklee's right of possession; and if he undertook still to manage the farm, directly or indirectly, without some new license for the purpose, he did so without right and as a wrong doer. And we think he acquired no right by such wrongful interference, which could stand against the claims of the Olcott title, which is admitted still to exist. The consequence is, that Adams, and not Dunklee, was entitled to claim the crops in dispute, provided he was the legal trustee and holder of the Olcott title. It is insisted that he was not; but that, upon the death of Olcott, that title passed to his widow, who is

still living.  And if this be so, it must follow, that the action of re-
plevin was unfounded, and that the other action should be sustained
upon the possession of Sargeant, the officer, though Dunklee had no
attachable interest in the property, and though the attachment should
be deemed a trespass upon the widow's rights.

The remaining question, then, relates to the Olcott title, as be-
tween the widow and the administrator.  And this must depend on
the construction of the lease, or conveyance, from Dunklee to Olcott,
before mentioned.  That "indenture, bargain, or lease," as it is
called, professes to be between Dunklee of the first part, and Olcott
of the second part; and Dunklee, for the expressed consideration of
two thousand dollars received of Olcott, "doth by these presents let
and lease to him the said Timothy Olcott, *for and during his nat-
ural life, and the life of Hannah Olcott his wife,* all that certain
farm," &c.—" To have and to hold the above described premises,
with the appurtenances, *to him the said Timothy Olcott, and Han-
nah Olcott,* for and during their, and each of their, natural life, to
their use and benefit during said term."  The question is, whether
Timothy Olcott took an estate for both lives, or whether a contin-
gent remainder was created for Hannah Olcott, which became ves-
ted on the death of her husband.

It may be remarked, that the rules for the structure and exposi-
tion of deeds of conveyance are emphatically of the artificial and
technical class, and must depend upon authority.  And by those
rules the premises, or granting part, of a deed is that which passes
the estate from the grantor, and usually vests it in the grantee.  And
hence it is universally acknowledged, that no one can take an im-
mediate or present estate under the deed, who is not named as a
grantee in the premises, provided any one is therein named; if no
one is there named, the grantee may be ascertained from other parts
of the deed.  But it is not required, that the quantity of estate
granted should be mentioned in the premises, and much less that any
intended qualifications or limitations of it should be there mentioned;
all this may be left to be fixed and determined by the *habendum*
clause in the deed.  It is not unusual, however, for the premises to
give the quantity of estate granted.  And when this is done, it ap-
pears to be settled, that the grantee named in the premises at once
takes the entire estate described; and that any limitation in the

*habendum* designed to abridge or lessen such estate of the immediate grantee, in favor of a party not named in the premises, shall be treated as repugnant and inoperative. The authorities cited to these points sufficiently confirm the rules I have here stated. The case of *Spyve* v. *Topham*, 3 East 115, is urged in argument, as having held a different doctrine. But the question there was, whether the indenture had been rendered void by the insertion of a wrong name in the premises. And the court merely rejected the name in that place as surplusage, and gave effect to the deed as if no name had appeared in the premises.

Here the immediate grant in the premises is to Timothy Olcott for his own life and the life of his wife. The entire estate for both lives is thus granted to him in the first instance; and to hold that the wife took in remainder after his death would be to abridge and lessen the estate once vested in him. And as the weight of authority is decidedly opposed to such a construction of the deed, we do not feel at liberty to adopt it.

The result is, that judgment in both cases must be reversed.