REUBEN B. DUNKLEE v. LUTHER ADAMS, Administrator of TIMO-
THY OLCOTT.

IN CHANCERY.

The court of chancery will not relieve against a forfeiture of an estate, declared
at law, where the condition, for the breach of which the forfeiture has been
declared, consists in the performance of services and attentions for the personal
comfort and convenience of the party claiming the forfeiture. In such a case
the *time* for the performance of the service is of the essence of the contract;
it can never be performed afterwards; and it is impossible to put the party in
the precise situation in which he would have been, if the condition had been
performed.

And even if the forfeiture were declared for a breach of a condition admitting of
compensation, the court will not relieve, when the evidence shows, that the
party has been guilty of other breaches, for which a forfeiture might be enforced
at law, and when, under all the circumstances, the court cannot feel confident,
that the party would thereafter faithfully perform his covenants.

So the insolvency of the party asking the relief affords a strong reason, why the
relief should not be granted, in a case where such insolvency might, and prob-
ably would, prevent the due performance of the covenants.

And when the covenants are for the performance of certain personal services, and
for the delivery, from time to time, of certain specific articles of produce and
provisions, for the comfort and support of the covenantees, and a forfeiture has
been declared at law for a breach of the conditions, the court of chancery have
no power, upon a bill brought for relief, to change the contract of the parties,
and direct a certain sum to be paid periodically, in lieu of the performance of
the covenants stipulated.

And where the forfeiture, in such case, was taken for a breach of a covenant to
keep a suitable horse for the use of the covenantees, and it did not appear, that
there had been any subsequent performance, or acceptance of performance, of
that covenant, it was held, that a subsequent acceptance, by the covenantees,
of the performance of other covenants, essential to their support, would not ope-
rate as a waiver of the forfeiture,—it appearing, that a litigation was pending
at the time between the parties, in which the covenantees were constantly
insisting upon the forfeiture.

The case of *Austin* v. *Raymond*, 9 Vt. 420, commented upon and explained.

Dunklee v. Adams, Adm'r.

APPEAL from the court of chancery. On the fourteenth day of October, 1837, the intestate, Timothy Olcott, conveyed to the orator, Dunklee, in fee, a farm in Chester, together with certain stock and farming tools, for a consideration of about $800, which was appropriated to the payment of Olcott's debts; and Dunklee on the same day executed to Olcott a lease of the farm, for the term of the natural lives of Olcott and his wife, and the survivor of them, subject to the occupancy of the same by Dunklee, for the purpose of enabling him to furnish certain articles and render certain personal services, specified in detail in the lease, for the support and personal comfort and convenience of Olcott and his wife,—the occupancy to be enjoyed by Dunklee, so long as he continued to perform these covenants upon his part.

Dunklee entered into possession of the farm, and undertook the performance of his covenants in the lease; and Olcott, having become dissatisfied with him, commenced an action of ejectment against him, at the November Term, 1839, of Windsor county court, for the possession of the farm, and, having shown a breach, by Dunklee, of a covenant in the lease to keep a suitable horse for the use of Olcott and his wife, he recovered a judgment against him, May Term, 1841, for the seizin and possession of the farm; and that judgment was affirmed by the supreme court, March Term, 1844.*

This bill was brought soon after the affirmance of the judgment by the supreme court, in 1844, for the purpose of obtaining relief from the forfeiture; and it was alleged, as the ground for relief, that the orator had performed all the covenants contained in his lease, to the time of bringing this bill, except that on one occasion he had neglected to keep a suitable horse for the use of Olcott and his wife,—for which neglect the judgment in the action of ejectment had been rendered against him; that he had offered to pay Olcott all the damages he had sustained by reason of the breach of that covenant; and that he had paid to him the damages and costs recovered in the action of ejectment;—and the orator prayed, that the sum due in equity to Olcott, for the breach of that covenant, might be ascertained, and the complainant be permitted to redeem

---

See *Olcott* v. *Dunklee*, 16 Vt. 478; and *Adams* v. *Dunklee*, 19 Vt. 382.

the premises by paying the same, and for a perpetual injunction against the judgment in the action of ejectment, and for general relief.

In consequence of the death of Olcott soon after the final judgment was rendered in the action of ejectment, in 1844, it became necessary for his administrator to revive that judgment by *scire facias,*— which was pending at the time of the hearing of this suit'in the supreme court; so that Dunklee had remained in possession of the farm to that time. The administrator, who defended this bill for the benefit of the estate, and of the widow of Olcott, who was still living, insisted, in his answer, that Dunklee had committed numerous other breaches of his covenants, besides that for which the forfeiture was declared in the suit at law. And testimony was taken on the part of the defendant, tending to sustain the answer; and the orator filed testimony tending to prove, that he had continued in the full performance of all his covenants to the time when the testimony in the case was closed.

The court of chancery, September Adjourned Term, 1845,— HEBARD, Chancellor,—dismissed the bill; from which decree the orator appealed.

*I. W. Richardson* and *Washburn & Marsh* for orator.

The indenture executed by the orator and Olcott was a *quasi* mortgage; the performance of the stipulations on the part of the orator was a *condition subsequent;* and the orator was liable to forfeit his right of immediate possession, if he failed in performance.

1. If, then, there had been an entire failure on the part of the orator to perform, we insist, that a court of equity will relieve him from the forfeiture. The forfeiture was intended merely as a security; and when the party obtains his damages, he gets all, to which he is in equity entitled. The only question in the case is, whether compensation can be made. This was the original doctrine of the English courts, and is founded on the soundest policy of equity. *Cage* v. *Russell,* 2 Ventr. 352. *Webber* v. *Smith,* 2 Vern. 103. *Hack* v. *Leonard.* 9 Mod. 91. *Wafer* v. *Mocato,* 9 Mod. 112. *Grimston* v. *Ld. Bruce,* 1 Salk. 156. *Northcote* v. *Duke,* Ambl. 511. *Thomas* v. *Porter,* 1 Chanc. Cas. 95. *Cox* v. *Higford,* 2 Vern. 664. *Saunders* v. *Pope,* 12 Ves. 282.

53

It is true, that the English courts have, in the case of *Bracebridge . v. Buckley,* 2 Price 200, restricted this doctrine, in its application to covenants to repair; but it is to be observed, that that was but the decision of a *majority* of the court; and the opinion delivered by Baron Wood is certainly entitled to great consideration.

But in this country the doctrine of the case of *Bracebridge* v. *Buckley* cannot be said to have obtained a foothold. It is directly controverted by Judge Story ; 2 Story's Eq. 545–554.· Chancellor Kent takes the same ground; 2 Story's Eq. 553, note 1 ; *Skinner* v. *Daton,* 2, Johns. Ch. R. 535. And the same has been held in Connecticut ; *Walker* v. *Wheeler,* 2 Conn. 301; and see *Wells* v. *Smith,* 2 Edw. 78. And the case of *Austin* v. *Raymond,* 9 Vt. 420, is directly in point, both in deciding that the injury to Olcott, resulting from the breach, admits of compensation, and that the orator is entitled to redeem.

2. But the case at bar comes within an exception, expressly recognized in *Bracebridge* v. *Buckley.* The doctrine of that case is limited to cases, where the landlord has not received rent from the tenant, nor recognized the existence of the tenancy, subsequent to the accruing of the forfeiture, which he seeks to enforce. This is a sound distinction, and established by repeated adjudications. *Chalker* v. *Chalker,* 1 Conn. 91. *Willard* v. *Henry,* 2 N. H. 120. *Coon* v. *Bricket,* 2 N. H. 163. *Batchelder* v. *Robinson,* 6 N. H. 13. *Harris* v. *Troup,* 8 Paige 423. *Converse* v. *Cook,* 8 Vt. 164. *Smalley* v. *Hickok,* 12 Vt. 153. Salk. 187. But in this case it is proved, that, from the time of the commencement of the action of ejectment until the bringing of this bill, Olcott and his wife have constantly accepted performance, by the orator, of the covenants upon his part in the indenture.

3. The orator has always remained in possession of the premises. Olcott and his wife have accepted performance of the covenants on the part of the orator, except those for *which the for*feiture was claimed and allowed in the action of ejectment, and have made no entry, nor claim of entry, for any other breaches; *Chalker* v. *Chalker,* 1 Conn. 91; this is a waiver of all claim for forfeiture, on account of any breach, not proved in the action of ejectment. The only breach then proved was, that the orator *had not kept and fur-*

*nished a suitable horse.* This, then, is the only breach, for which the orator is under the necessity of asking relief by redemption; and this is in no way analogous to a breach of a covenant to repair, but is clearly capable of *compensation by damages.* *Willard* v. *Henry,* 2 N. H. 120. *Coon* v. *Bricket,* Ib. 163. *Austin* v. *Raymond,* 9 Vt. 420.

*L. Adams, pro se.*

If the orator be permitted to redeem, or be relieved from the forfeiture consequent upon various breaches of his express covenants, it must be upon some new principle, not yet recognised in a court of equity. Equity lends its aid only in that class of cases, where the forfeiture was the result of *accident,* without fault on the part of him who asks to be relieved, and where the injury is capable, *clearly,* of compensation. Eden. on Injunct. 20, 21. 1 Chit. Pract. 290. Am. Chanc. Dig., Tit. Forfeiture. *Livingston* v. *Thompkins,* 4 Johns. Ch. R. 431. *Skinner* v. *Dayton,* 2 Ib. 536. *Bracebridge* v. *Buckley,* 2 Price 200. *Hill* v. *Barclay,* 16 Ves. 402. *Olcott* v. *Dunklee,* 16 Vt. 478. The orator has been guilty of numerous breaches of his covenants, such as could not be the result of accident, and most of which are incapable of compensation. And aside from the express breaches, the court will not overlook other facts, —such as the orator's treatment of Mrs. Olcott, his insolvency, and his character.

The opinion of the court was delivered by

HALL, J. The first question made in this case is, whether the breach of covenant, for which the forfeiture was declared in the court of law, was of such a character, as to admit of relief, upon principles by which courts of equity are governed.

The English court of chancery seems to have assumed the jurisdiction, at an early day, of granting relief against penalties and forfeitures. The ground of the jurisdiction was, that the penalty, or forfeiture, was designed as a mere security for the performance of something else, and that the performance of the thing intended was all that the party could equitably demand. No distinction appears to have been taken between penalties and forfeitures. In many of the cases it is said the court would grant relief in all cases of the

forfeiture of an estate, where compensation for the breach of the condition could be made. And it was held, that compensation could be made, where the breach was the non-payment of money, as in mortgages, under devises, and for rents and annuities; 2 Fonbl. Eq., b. 3, ch. 1, sec. 2; *Grimston* v. *Ld. Bruce*, 1 Salk. 156; *Cage* v. *Russell*, 2 Ventris 35; and also when the breach was the non-performance of some species of collateral acts,—as for not repairing leasehold premises; *Webber* v. *Smith*, 2 Vern. 103; *Hack* v. *Leonard*, 9 Mod. 112; *Cox* v. *Higford*, 2 Vern. 664; *Saunders* v. *Pope*, 12 Ves. 282; for cutting down timber; *Northcote* v. *Duke*, Ambl. 511; *Thomas* v. *Porter*, 1 Ch. Cas. 95; and for not renewing a lease; *Rawstone* v. *Bentley*, 4 Bro. C. C. 415. But it was said, compensation could not be made for the breach of a condition not to assign; *Wafer* v. *Mocato*, 9 Mod. 112; nor for a forfeiture by a tenant for life, by making a feofment, levying a fine, suffering a recovery, or wilful forfeitures by copy holders; Prec. Chanc. 570; *Peachy* v. *Duke of Somerset*, 1 Str. 452.

It was impracticable to lay down any definite rule, or principle, by which it was to be determined, whether compensation could be made in any given case. It necessarily depended, when the breach was not for the non-payment of money, upon the discretion of the chancellor, whose power in that respect could not well be otherwise than arbitrary. In Precedents in Chancery, 570, it is said, that " in all cases of forfeiture and breaches of condition, some kind of a compensation may be made; therefore, this rule is to be extended no farther, than where compensations have been allowed." The writer of the text of Fonblanque's Equity, first published in 1737, seems to have doubted the just application of the rule to any other cases of forfeitures, but such as were for the non-payment of money; saythat in such case the court might allow interest for it from the day it should have been paid; " but where it is for the doing of a collateral act, they cannot know of what value it is to the party." 1 Fonbl. Eq., b. 1, ch. 6, sec. 4. Maddock, in deducing the rule from the early cases, says, " Equity will only relieve, where *the thing may be done afterwards*, or a *compensation can be made for it ;* but unless a full compensation can be given, so as to put the party precisely in the same situation, a court of equity will not interfere ; for such a jurisdiction would be arbitrary. 1 Ch. Prac. 32.

Dunklee *v.* Adams, Adm'r.

But the soundness of the early doctrine in regard to the granting of relief against forfeitures of estates, incurred by the non-performance of collateral acts, has been more recently denied in England; and it now appears to be the established doctrine, that relief will only be granted, where the breach of the condition is for the non-payment of money; and it is granted in such case on the principle, that the allowance of interest for the delay forms a certain rule of compensation, and is equivalent to a payment at the day. *Wadman* v. *Calcraft*, 10 Ves. 68. *Hill* v. *Barclay*, 16 Ib. 403. *S. C.*, 18 Ib. 59. *Reynolds* v. *Pitt*, 19 Ib. 140, 241. *Bracebridge* v. *Buckley*, 2 Price 200. *Rolfe* v. *Harris*, 2 Ib. 206, note. 2 Story's Eq., sec. 1321. Eden on Inj. 46–48.

In none of the early cases, cited in behalf of the plaintiff, was relief ever granted, where the condition, for the breach of which the forfeiture had been declared, was, like that in the present case, for services and attentions to be performed for the personal comfort and convenience of the party; and I apprehend no such cases can be found. In such a case the *time* for the performance of the service is of the very essence of the contract; it certainly can never be done afterwards. It is impossible to put the party in the precise situation he would have been in, if the condition had been performed. How can it be said, that any particular sum of money will be a just compensation for the personal inconvenience and suffering occasioned by the breach of it; and equivalent to the actual performance of the service at the time? And if a party, like the defendant's intestate, in order to secure such personal services and attentions of another, as to make the residue of a declining life a period of comfort and enjoyment, can, without any fault of his own, be deprived of the benefit of his contract for that purpose, and, by the will of a chancellor, be forced to take something else in lieu of it, which he had never contracted for, and which he might well have had, without the contract, then, indeed, it seems to me, that what are sometimes termed solemn contracts are to be considered as rather trifling matters, and of very little use to be entered into.

Much reliance is placed, by the plaintiff's counsel, upon the case of *Austin* v. *Raymond*, 9 Vt. 420, where, upon a bill to foreclose a mortgage, given to the plaintiff, conditioned for the support of himself and wife during life, the court held, that the failure of the mort-

gagor to perform the condition was capable of compensation, and allowed the assignee of the mortgagor to redeem. But in that case the question in this could not have arisen. The contract was in form a mortgage, and perhaps liable to a different consideration in that respect. But it is sufficient, that that was not a bill for relief against a forfeiture. The mortgagee himself, who was entitled to the support, came into a court of equity, treating the mortgage as a subsisting contract, and, in effect, asked the court to fix upon a sum of money to be paid by the defendants, and, in default of payment, for a foreclosure of the equity. If the bill had prayed the court to have the defendant's estate declared forfeited, it must, it would seem, necessarily have been dismissed ; for it is a universal rule in equity, never to enforce a forfeiture, or to aid in divesting an estate for the breach of a condition subsequent. 4 Kent 130. 2 Story's Eq., sec. 1319. *Popham* v. *Bampfield,* 1 Vern. 83. *Livingston* v. *Tompkins,* 4 Johns. Ch. R. 431. It is not perceived, what other decision could have been made in that case, whatever might have been the views of the court upon the propriety of granting relief against a forfeiture upon such a contract.

But it is not intended to decide the case upon the ground, that the breach of the covenant, for which the estate had become forfeited at law, was incapable of compensation, for, independent of the question of compensation, we think the plaintiff is not entitled to relief.

A court of chancery would never relieve a party from a forfeiture, but under a strong expectation, that his covenants would be faithfully performed thereafter. For this future performance of his covenants by the plaintiff, the court not only have no assurance, but the evidence tends very strongly to show, and we think does show, that he has been guilty of other breaches, for which a forfeiture might be enforced at law. The evidence, we think, shows a breach of the covenant to find wood cut fit for the old people, suitably housed ; and in respect to the covenant to keep a suitable horse for their use, on which the forfeiture was taken, the plaintiff appears to have been throughout inexcusably in fault. After the judgment in ejectment, the plaintiff did, indeed, furnish himself with another horse, free from the faults of skittishness and wildness, for which the first was condemned ; but we cannot think, that the horse substituted, a half blind, sickly old horse, which one of the plaintiff's witnesses says

might be worth ten or twelve dollars, and another says, would be worth nothing to him, is such a horse as was contemplated by the contract, or such an one as ought to have been furnished for the comfort and convenience of the old people. If relief is now granted, I do not perceive what is to prevent another suit in ejectment, and the enforcement of another forfeiture upon the same covenant for which the first was obtained, which would fix the forfeiture irrevocably against the plaintiff. For I apprehend no court ever relieved against a second forfeiture, for the breach of a covenant to perform a collateral act.

It is said in several of the English cases, that the insolvency of the party, by whom the forfeiture of an estate has been incurred, furnishing a presumption of his inability to perform his covenants, is a proper ground of refusing relief. The insolvency of the plaintiff is fully shown in this case; and though it may be his misfortune, rather than his fault, there is no reason, why Olcott, or his widow, should suffer by it. The solvency of Dunklee seems very necessary to the due performance of his covenants. He is to keep constantly for the use of the widow a horse, harness, wagon and cutter; and it may be very pertinently asked, what security there is, that he will be able to perform this covenant, when the property is daily exposed to attachment for his debts? It is not intended to say, that Dunklee's insolvency is of itself a breach of his covenant; but when, after he has forfeited his estate at law, he comes into a court of equity, asking to have the forfeiture vacated, and to be allowed the equitable privilege of performing his original contract, notwithstanding his former default, it may, and we think does, furnish a very strong reason, why the relief sought should not be granted.

Without going farther into the particular details of this case, it may be remarked generally, that the whole evidence has a strong tendency to show, that Dunklee's intention and object have been, to perform his covenants merely to the letter, rather than in the spirit of them. And if he is now again put to the performance of them, there seems no reasonable probability, that he will perform them in such a manner, as either to prevent future litigation, or another forfeiture.

It was suggested by the plaintiff's counsel, perhaps under this view of the case, that the court might ascertain the probable future

cost of supporting the widow, and restore Dunklee to the possession of the farm, upon the annual or other periodical payment of a specified sum of money. But this would be making a new contract for the parties, not restoring them to the old. The parties might, if they had chosen to do so, have substituted periodical pecuniary payments, in lieu of the rendition of specific articles and services, as the terms upon which Dunklee should retain the possession of the farm; but they preferred the delivery of the articles and the performance of the services; and they had a right to such preference. And shall we now, at the instance of the party in fault, and without the assent of the other, annul the contract they have solemnly entered into, and set up another, to bind them in future, which they never have made, but which we might, perhaps, think it would have been quite as well for them to have made ? I doubt the legitimate power of any court thus to interfere with men's contracts. I doubt whether a precedent can be found for such an act, either in English or American chancery law. The question, in all cases of bills for relief against forfeitures, is upon the restoration of the old contract, —not whether the court will substitute a new one for it.

On the whole, when the state of feeling, which manifestly exists between these parties, is looked upon,—whoever may be blameable for producing it,—and possibly all the blame in that respect may not be on one side; and when we take into consideration the great and leading object of this whole contract, which was the comfort and support of these old people through life, for which a full and adequate consideration appears to have been paid, we have been unable to discover, from the facts before us, any other practicable mode of giving full effect to that object, but to leave the parties to the enforcement of their legal rights.

It has been urged, in behalf of the complainant, that the acceptance by Olcott, in his life time, and by his widow, since, of sundry articles under the lease is to be treated as a waiver of the forfeiture. But we do not think so. A waiver of the forfeiture would have been a good defence at law; and the judgment is to be taken as conclusive evidence, that there had been none, at the time it was rendered. But we do not find there has been a performance, or acceptance of performance, at any time, of the covenant to keep a horse for the use of Olcott and his wife, for the breach of which the

forfeiture was declared; and we cannot consider the mere neglect of the covenantees to refuse to accept the means of sustenance, when tendered to them, during a period of continual litigation, in which they were constantly insisting on the forfeiture, as satisfactory evidence of a waiver of it.

It may be remarked, in conclusion, that although the result, to which we have come, may prevent the plaintiff from deriving that advantage from the contract, which he might have obtained by the performance of it, yet it does not seem probable, that he will, on the whole, be greatly the loser by it. The value of the reversion of the farm, which is left in him, together with that of the personal property, obtained when he took possession, probably exceeds the consideration paid by him. It is not therefore a case, in which the harsh operation of the law has called very strongly for the interposition of this court.

The decree of the chancellor, dismissing the bill, is affirmed, with additional costs, and the case remanded to the court of chancery, to carry the decree into effect.

