# BENNINGTON COUNTY.

## FEBRUARY TERM, 1837.

---

PRESENT, HON. CHARLES K. WILLIAMS, *Chief Justice.*
    "   STEPHEN ROYCE,     } *Assistant Justices.*
    "   JACOB COLLAMER,   }

---

JOHN AUSTIN *v.* A. M. AUSTIN, and S. C. RAYMOND,—Bill.

and

S. C. RAYMOND *v.* J. and A. M. AUSTIN,—Cross bill.

*Bennington,
February,
1837.*

*( In Chancery.)*

A receipt in full of all demands is no evidence of the discharge of a mortgage given to secure the party's future support.

A mortgage, conditioned for the support of the mortgagee, admits of compensation ; and where the mortgagor has conveyed his interest, the purchaser will be permitted to redeem, by making compensation for part support, to be settled by the master, and paying a specific allowance for the future.

The facts in this case are stated in the opinion of the court, delivered by

PHELPS, CHANCELLOR. This subject comes before us upon a bill and cross bill, and the real parties litigant are John Austin and S. C. Raymond, Alanson M. Austin having little or no interest in the result. The material facts appear to be these. John Austin, the orator in the original bill, being possessed of a farm in Dorset, and being advanced in life, conveyed the same to his son, A. M. Austin, and took from his son a mortgage, conditioned for the support of himself and wife, during their natural lives. This mortgage was executed and recorded on the 13th day of May, 1826. Subsequently to this, viz. on the 17th of March, 1827, John Austin, for some consideration not shewn to us, executed to his son, Alanson, a receipt of the following tenor, viz.

<span style="margin-left:2em;">Bennington,<br>*February,*<br>1837.</span>

<span style="margin-left:2em;">Austin<br>*v.*<br>Austin and<br>Raymond.</span>

"Received, Manchester, March 17, 1727, of Alanson M. Austin, seven hundred and fifty dollars, in full for a bond, which I hold against him, also a note for seventy-five dollars, which I also hold against him, and in full of all other demands to this date; as witness my hand," &c.

This receipt was, on the 20th of the same month, recorded in the town records in Dorset, but the object and purpose of procuring it to be recorded are not disclosed. Subsequently to this, to wit, in April, 1828, Alanson M. Austin, being then in possession of said farm, applied to Raymond for a loan of money, and procured a loan of four hundred dollars, for which he executed a mortgage of the same farm.

Alanson M. Austin having become insolvent and left the country, John Austin brings his bill to foreclose his mortgage; and Raymond, who is made defendant, brings his cross bill, seeking for a discovery, and to have his mortgage preferred to that of the orator, partly upon the ground that the orator's mortgage has been satisfied and discharged, and partly upon the ground of an alleged fraudulent collusion between the Austins, to deceive and induce him to make the loan, upon the supposition that the previous incumbrance was discharged. Although there are some things about the case, which appear suspicious, yet the proof of any fraudulent practice, on the part of John Austin, falls altogether short of establishing the fact. The case, therefore, turns upon the effect of the papers already mentioned. It is insisted in behalf of the defendant, Raymond, that the effect of the receipt, executed by John to Alanson, is to discharge the mortgage. The receipt does not purport in terms to discharge the mortgage. It specifies a bond and also a note. It is diffi-

Bennington,
February,
1837.

Austin
v.
Austin and
Raymond.

cult to conceive what connexion the note can have with the condition of the mortgage.   As to the bond it may have been given as collateral to the mortgage ; but there is nothing in the case to show that it has any connexion with the subject of the controversy here; and we cannot proceed upon conjecture as to its tenor or purpose.   So far; therefore, as the subject matter of the receipt or discharge is specified in the instrument, there is nothing to sustain the position of the defendant, Raymond.   Nor can it have that effect as a receipt in full of all demands.   The word, demands, must be understood to refer to subsisting debts, at least, to such as are absolutely due and susceptible of liquidation.   It would not embrace a right to future support, which is, from its nature, contingent, depending upon the uncertainty of the party's life for its continuance; and upon a variety of circumstances, which cannot be anticipated, for its amount.   The receipt not purporting to discharge the mortgage, the recording of it becomes unimportant.   The orator's deed, must, therefore, have the preference, and the only remaining question is as to the terms of the decree.

Shall the orator's deed to Alanson be vacated, and the title be revested in him ?   Or shall Raymond be let in to perform the condition ?   There are insuperable objections to the former course.   Alanson had certainly an interest which he could legally transfer, and Raymond, as a *bona fide* purchaser, has certainly a right to retain that interest, if it be of any value.   It would, moreover, be a new thing to set aside a deed upon such grounds, especially at the expense of a subsequent purchaser.

It is argued, however, that the case does not admit of compensation.·   There is, certainly, no difficulty in making compensation for past maintenance, any more than in any case of a contract to perform services ; and, as to future support, the contract, is as susceptible of performance by Raymond now, as it was by Alanson in the outset.

As to the wilful default of Alanson, if it were wilful, it ought not to prejudice Raymond.   The case will, therefore, be referred to the master, to ascertain what will be a reasonable compensation for the past, over and above the use of the farm, which the orator has occupied, and what will be the probable amount, *per annum*, hereafter, and also the value of the use of the farm.

Raymond will be decreed to pay the difference for the time

past, as also to pay the like difference for the future; with an option to the orator to surrender the farm, and take an annual allowance for his support, or, if he so elect, to pay Raymond's mortgage and take the farm absolutely.

As to Alanson, both parties are entitled to a decree against him.