## GILMAN HENRY *v.* ELLIS TUPPER AND THE TOWN OF BARNARD.

*Relief in equity from forfeiture of estate conditioned for support of grantee.*

[ IN CHANCERY. ]

A court of equity may grant relief from the forfeiture of an estate conditioned for the maintenance and support of the grantee where the forfeiture was accidental and unintentional, and not attended with irreparable injury.  But it rests in the sound discretion of the court when relief shall be granted in this class of cases.

APPEAL FROM THE COURT OF CHANCERY.  The bill alleged that on the 23d of November, 1829, Benjamin Tupper, then of Barnard, was the owner in fee of a certain farm of land in said town of Barnard, which he had before that time purchased of his father, Ellis Tupper, of said Barnard ; and that on said 23d of November, 1829, the said Benjamin, for the expressed consideration of one thousand dollars, executed and delivered to the said Ellis his mortgage deed, or deed of defeasance of the said farm, to which said deed there was the following condition : " Now the condition of the above obligation is such that if I, the said Benjamin Tupper, *shall furnish and provide a comfortable house and support for my parents, Ellis and Eunice Tupper, in health and in sickness, during their whole natural life,* and also furnish them with forty pounds of good wool in each year and every year so

long as my said parents or either of them shall request the same, and also provide a home in my family or with my parents for my three unmarried sisters so long as they shall remain single and unmarried, and board for all necessary domestic assistance which my said parents shall need, and shall pay to my sister Deborah forty dollars in case she shall return home to live, and shall pay to each of my sisters Rebecca and Eunice forty dollars, and twenty-five dollars to my sister Nancy, payable one-half in one year and the other half in two years after my father's decease, and shall pay the debts due from my father to Doctor Isaac Danforth and Lemuel Richmond, then this obligation shall be null and void; otherwise in full force and virtue in law;" and that afterwards, on the 17th of February, 1841, the said Benjamin Tupper mortgaged said premises to Daniel Aikens, of said Barnard, to secure two promissory notes described in his mortgage deed of that date, and that on the 8th of March, 1842, he also mortgaged said premises to Rollin Richmond, of said Barnard, to secure the payment of six other promissory notes, neither nor any part of which notes were ever paid by the said Benjamin; and that afterwards, on the 4th of October, 1844, the said Aikens, for a valuable consideration, purchased and became the owner of the six notes embraced in the mortgage from said Benjamin to said Richmond, and on the same day purchased of said Benjamin for a valuable and full consideration his equity of redemption, and all claims which the said Benjamin then had in and to said premises, and that thereupon the said Benjamin and the said Richmond made, executed and delivered to the said Aikens their joint quit-claim deed of said premises, whereby the said Aikens became the absolute owner in fee of the same, subject only to the mortgage of said Ellis; that the said Benjamin continued to reside upon and have possession of said premises from the time of the said mortgage to the said Ellis up to the *first day of April*, 1845, or thereabouts, at which time the said Benjamin surrendered possession of the same to said Aikens, and that, during all the time aforesaid, *the said Benjamin fully kept, performed and carried out, in good faith, all and singular, the condition and stipulations* named and set forth in the conditions of said mortgage to said Ellis, agreeable to the true intent and meaning thereof, except the payment of the said claim of the said

Danforth, which said claim the said Aikens had since paid; that, upon the surrender by the said Benjamin, the said Aikens took possession of said premises and continued said possession until the first of April, 1847, when he sold and conveyed said premises to one John A. Spooner, who entered and continued in possession thereof until the first of January, 1849, when he conveyed his right and interest in said premises to one Loren S. Winslow, and thereupon surrendered possession of the same to one Rollin Richmond, who, by consent of said Winslow, continued in possession of said premises until the first of April, 1850; that the said Aikens conveyed said premises to said Spooner by a warranty deed, containing the usual covenants of warranty and against incumbrances, whereby it was the duty of said Aikens by law to see to it that the conditions and stipulations in said mortgage to said Ellis were performed and fully complied with; that the said Spooner, in order to secure the purchase money for said premises, made, executed and delivered his five promissory notes, one for the sum of seven hundred dollars payable on demand with interest annually, and the other four for the sum of two hundred dollars each, payable on the first days of April of the years 1848, 1849, 1850 and 1851, with interest annually after the first of April, 1847, all made payable to said Aikens or bearer, and dated March 20th, 1847; and, to secure the payment of said notes, made, executed and delivered his two mortgage deeds of said premises to said Aikens, dated the same day and year last aforesaid; that afterwards, on the first of January, 1849, *the said Aikens for a valuable consideration paid by your orator therefor, sold, assigned and transferred said notes and mortgage deeds to your orator*, which said notes or any part thereof had never been paid, and that *the said Spooner was utterly insolvent and worthless*, and that the only security the orator had, and the only means of enforcing payment of said notes was by the lien created by said mortgage, *the said Aikens being also utterly insolvent and irresponsible*, and that the sum now due the orator on said notes, including interest, was more than two thousand dollars; that the equity of redemption or interest conveyed by said Spooner to said Winslow, as above set forth, was of no value whatever, and that the orator on the first of April, 1850, as the assignee and holder of said Spooner notes and mortgages, took

possession of said premises, and had ever since continued in such possession; that it was the duty by law of the said Daniel Aikens while he was so the owner of said premises, and had possession thereof, to have performed, kept and fulfilled the stipulations and conditions contained in the said mortgage deed from said Benjamin to said Ellis, agreeably to the true intent and meaning thereof, and that the *said Aikens assured the orator* at the time of the sale and transfer to him of said Spooner notes and mortgages, and had always, both before and since said sale and transfer, *assured the orator that he, said Aikens, had at all times* since he became the owner of said premises, and ever after the said Benjamin ceased to fulfill and perform the conditions and stipulations in said mortgage to said Ellis, in good faith, *fully kept, performed and fulfilled, all and singular, the stipulations and conditions of said mortgage deed* up to the time the orator took possession of said premises as above set forth, and that *the orator verily believed that said condition and stipulations in said mortgage deed had been faithfully and fully performed* as above set forth ever since the same was given up to the time the orator took possession of said premises; that the said Eunice Tupper, mother of the said Benjamin, departed this life about the first of August, 1836, and that the orator ever since he became the owner and possessor of said premises, had always in good faith made provision for said Ellis, and done all things on his part to carry out, fulfill and perform, all and singular, the conditions, stipulations and requirements of said mortgage to said Ellis, agreeably to the true intent and meaning thereof, and that if the said Ellis had not received the full benefit of the same, it was because he had refused to accept the same; that on the first of June, 1851, the said Ellis Tupper, upon some pretended consideration, transferred to the town of Barnard, or to some person for the use of said town, some pretended interest in, or claim to said premises, and that the said town of Barnard claimed some interest in, or lien upon said premises under and by virtue of said mortgage to said Ellis; and that the said town of Barnard afterwards, to wit, on or about the ——— day of ———, 1851, commenced an action of ejectment in the name of the said Ellis Tupper as plaintiff against the orator, the said Daniel Aikens, Edwin Gifford, and Rollin Richmond, as defendants, which action was returnable to

and entered in the county court for the county of Windsor, at the December Term, 1851, and was continued in said court from term to term until the May Term of said court, 1853, when the said action was brought to trial, and the plaintiff in said action claimed to recover the possession of the premises therein demanded, which were the same premises described in said mortgage to said Ellis Tupper, by reason of breaches of, and failure to keep and perform the stipulations and conditions of said mortgage to said Ellis, so far as the same related to the furnishing and providing a comfortable house and support for the parents of said Benjamin in health and sickness during their whole natural life; said plaintiff in said suit making no claim that there had been any breach of any other part or portion of said stipulations and conditions; and that upon the trial of said action, to the surprise of the orator, testimony was adduced on the part of the plaintiff from which the jury empanneled to try said action found a breach of some of the said stipulations and conditions which said plaintiff claimed as aforesaid to have been broken, and thereupon returned their verdict for the plaintiff for the possession of said premises, and for the sum of one hundred and forty dollars for the rents and profits of said premises, and his costs, and that thereupon judgment was entered for the plaintiff accordingly, from which judgment the orator entered a review in due form of law to the then next term of said court; and that the orator therefore admitted that there had been breaches suffered and committed of the conditions of said mortgage as found by said jury; that should the plaintiff in said action obtain final judgment in said action against the orator it would seriously embarrass him in asserting and exercising his right in and to said premises, if not entirely extinguish such rights, at the same time subjecting him to the payment of a large sum for the rents and profits of said premises, thereby causing him great hardship and injustice, and that he had at all times since he became interested in said premises, and still was willing and anxious to come to a fair, just and equitable settlement of all matters growing out of said mortgage to said Ellis, and the conditions thereof, and to pay whatever the said Ellis or the said town of Barnard or any other person or persons reasonably deserved to have growing out of any breach of, or failure to perform and keep, any of the stipulations

or conditions of said mortgage, and that he had frequently applied to the said Ellis and to the said town of Barnard for that purpose, &c.

The prayer of the bill was that it might be ascertained by the court of chancery what breaches had been committed or what failures there had been to comply with the conditions in the deed from said Benjamin Tupper to Ellis Tupper, and what sum of money ought to be paid, or other thing done, in consequence of such breach or failure; the orator offering to pay such sum of money or perform such other act as the said court should adjudge just and equitable; and the bill further prayed that the further prosecution of said action of ejectment might be enjoined, &c.

To this bill the defendants demurred; and the court of chancery sustained the demurrer *pro forma,* and ordered the bill dismissed. Appeal by the orator.

*Converse & Barrett,* for the orator.

The only question raised by the pleading is whether the plaintiff is entitled to any relief; in other words, whether chancery has any power to allow the premises to be redeemed? The foundation of the suit at law was a mortgage. It was a deed with defeasance. It has all the properties and requisites of a mortgage. It was clearly made to secure the fulfillment of certain specified conditions. Had the things therein specified been performed and kept, the title would have been absolute in the mortgagor or his assigns. It would require no conveyance from the mortgagee to make the title perfect; *Lamfair* v. *Lamfair,* 18 Pick. 299; 2 Cruise 80, note and cases there cited; 25 Vt. 558.

The statute makes all mortgages redeemable, without distinction, and provides that courts of law, even, may pass a decree and allow redemption. But courts of law cannot well ascertain the sum due in equity, unless the same be payable in money, and consequently, in a case like the present, courts of law generally turn the parties over to chancery. The fact that courts of law have equity powers conferred upon them in those cases by no means takes away or abridges the powers of the court of chancery in the same cases. They are merely concurrent jurisdictions; 2 Sto. Eq. 536, sec. 1301.

If premises are not redeemable, the consequence is, the same are *forfeited* for the least violation of any of the conditions, and the mortgagor or his assigns from that moment are divested of a title in fee, as all the authorities show; and what the moment before was a mere security, a mere chattel interest in the land, an intangible and unattachable interest of the mortgagee, becomes an absolute title. But it must be a very extraordinary condition that must work such a state of things, and produce a *forfeiture* with no power of redemption. It is certain no such case was contemplated by the statute. If it is a mortgage it is redeemable. If a mortgage, there must be an *equity of redemption.*

But it is insisted that, although a mortgage in its inception, the title has become absolute in the mortgagee or his administrator, by a breach of the conditions, and the equity *ipso facto* foreclosed, and this is attempted to be justified on the ground that the breaches do not admit of compensation. The breach complained of is that "mortgagor did not furnish a comfortable house and support for the parents in sickness and health, during their whole natural life." There can be no doubt that equity will relieve against the forfeiture if compensation can be made; 2 Sto. Eq. Juris. 544, sec. 1314. Why cannot compensation be made? Was it ever supposed that because the contract or covenant or other instrument did not of itself show the precise number of dollars and cents that a breach of it would subject the delinquent party to pay, that, therefore, the damages were incapable of estimation?

But it has been decided by this court that "a mortgage conditioned for the support of mortgagee admits of compensation;" 9 Vt. 420, *Austin* v. *Raymond;* 2 Cruise 80; 18 Pick. 299. Is there any doubt that the mortgagee could have brought his bill to foreclose? If he was the absolute owner, how could he maintain a bill to foreclose?

There is no doubt that *dicta* may be found in books establishing the doctrine that chancery will not relieve when there has been a failure to comply strictly with the terms of a covenant or engagement to do anything but to pay money. But these are almost exclusively confined to cases arising on leases, and where there are peculiar stipulations in the lease; 2 L. Cas. Eq. 458.

There is also to be found in the books a distinction between

conditions *precedent* and *subsequent,* some judges are made to say that chancery would relieve against the consequences of the latter, but not the former. Other judges make no distinction, and it seems now pretty well settled that no distinction of the kind is recognized, but the only question is whether compensation can be made ; 2 Cruise 36, sec. 29.

The case of *Dunklee* v. *Adams, Adr.,* 20 Vt. 415, is not an authority against the orator. That case turned upon the peculiar provisions of the lease, and the peculiar circumstances of that case. It does not in the least trench upon the authority of the case of *Austin* v. *Raymond,* above alluded to.

It is believed no authority can be found that sustains the defense. The case of *Willard* v. *Perry,* 2 N. H. 120, clearly establishes a contrary doctrine, at least negatively. The case of *Bassett* v. *Bassett,* 10 N. H. 64, very fully sustains the position of the orator.

It is asserted by some of the English judges that parties are not relieveable in equity from breaches of covenants in leases, even pecuniary covenants for payment of rent, unless the omission was the result of "*inevitable accident,*" and that where the transgression is "*willful*" chancery will refuse relief; 2 Price 200, and note ; *Rolfe* v. *Harris,* 2 Sto. Eq. 554, sec. 1323. But this is opposed to the whole current of English decisions, and has never been followed in this country ; Sto. Eq. 552, secs. 1321 and 1322, and note 1.

When there was a breach of a conditional devise, it was held that the delinquent party was relieveable in equity ; *Watkins* v. *Wheeler,* 2 Conn. 299.

Whatever may be the doctrine as to leases, there is no doubt as to the power of chancery to relieve from forfeiture in mortgages ; 2 Sto. Eq. 546, sec. 1316, and note 1; *id.* 554, sec. 1323, and note 3 ; 2 Sto. 551, sec. 1319 ; Cruise 80, note.

The character of mortgagor and mortgagee is peculiar. The interest of mortgagee is a mere chattel interest.

The equity of redemption is a *subsisting* estate, and any one may redeem who has an interest, either by operation of law or otherwise. Any agreement that there should be no equity of redemption is void ; 2 Sto. Eq. 290, sec. 1023 and 287, sec. 1019 ;

4 Kent's Com. 129 ; 15 Johns. 205 ; 17 Mass. 289 ; 6 Conn. 142 ; 12 Vt. 695 ; 2 Eq. L. Cas. 414, 418, 432.

*P. T. Washburn,* for the defendants.

The action of ejectment now pending in the county court is brought for the non-performance of that part of the condition of the mortgage deed which provided that the mortgagor should furnish and provide "*a comfortable house and support*" for the mortgagee and his wife "*during their whole natural life.*"

The breach being conceded, the orator is not entitled to redeem. At common law, if the condition of a mortgage were not performed by the very day named, the lands were "*absolutely forfeited,*" and no subsequent tender of the money would avail the debtor ; 2 Greenl. Cruise 65, sec. 5 ; 2 Story's Eq. 542. And such is the effect *at law* to this day, except as modified by statute, in some of the American states, in respect to technical mortgages ; *Miller* v. *Hamblett,* 11 Vt. 499 ; *Olcott* v. *Dunklee,* 16 Vt. 485. The jurisdiction exercised by the court of chancery to grant relief in such cases was assumed many centuries subsequent to the inception of the rule at law ; 2 Greenl. Cruise 66, sec. 9 ; and was based upon the ground that *time* was not of the essence of the contract ; 1 Story's Eq. 106, note 2. The reason thus given indicates that the equitable jurisdiction of the court of chancery is not coextensive with the rule at law. And hence it has been established as a fundamental principle that "*equity will only relieve where the thing may be done afterwards, or a compensation can be made for it;*" but that "*unless a full compensation can be given, so as to put the party precisely in the same situation, a court of equity will not interfere ; for such a jurisdiction would be arbitrary;*" 1 Mad. 62, 27, 30, 31 ; *Peachy* v. *Somerset,* 1 Str. 453 ; *Descarlett* v. *Dennett,* 9 Mod. 22; *Wafer* v. *Mocarto,* 9 Mod. 112; 3 Daniel's Ch. Pr. 340, 341 ; *Dunklee* v. *Adams,* 20 Vt. 420 ; 2 Story's Eq. 544, sec. 1314; *ib.* 546, sec. 1315; *ib.* 548, note 1; *ib.* 554, sec. 1324; *Sanders* v. *Pope,* 12 Ves. 291 ; *Skinner* v. *Dayton,* 2 Johns. Ch. 536 ; *Livingston* v. *Thompkins,* 4 Johns. Ch. 431 ; *Atkins* v. *Chilson,* 11 Met. 117 ; 2 Lead. Cas. in Eq. Pt. 2, 462.

Neither the right to redeem nor the denial of the right depends

upon the nature of the *forfeiture* or its extent ; whether by lease, by mortgage, or by indenture ; whether affecting the title to real or personal estate, or the right to claim personal services ; but it is solely dependent upon the question whether, from the nature of the subject matter of the covenant or condition the breach is capable of complete *compensation.*   In *Peachy* v. *Somerset,* 1 Str. 447, where a bill was brought for relief against a forfeiture of copyhold by making leases contrary to the custom and without license ; and in *Descarlett* v. *Dennett,* 9 Mod. 22, where the forfeiture was for breach of covenant in a lease, that the lessee would not suffer persons to use a way over part of the lands demised ; and in *Wafer* v. *Mocarto,* 9 Mod. 112, where the forfeiture was for breach of a covenant in a lease not to alien ; and in *Bracebridge* v. *Buckley,* 2 Price 200, where the plaintiff prayed relief from a forfeiture of a term for breach of a covenant to repair ; and in *Rolfe* v. *Harris,* 2 Price 220, and *Greene* v. *Bridge,* 4 Sim. 96, where the bill was brought for relief against a covenant in a lease to insure the premises ; and in *Wells* v. *Smith,* 2 Edw. Ch. 78, where the contract was to convey upon performance of certain conditions ; and in *Robinson* v. *Cropsey,* 2 Edw. Ch. 138, where the contract was for repurchase, relief was alike denied ; and in each case upon the reason assigned, *that full and complete compensation could not be made.*

The breach of a condition to afford *personal support* does not admit of compensation, and is therefore not within the jurisdiction for relief assumed by the court of chancery.   *Time* is of the very essence of the contract ; and the personal inconvenience and suffering consequent upon the breach cannot be estimated ; *Dunklee* v. *Adams,* 20 Vt. 421.   It is a case within the reasoning of the the court in *Sparks* v. *Liverpool Water Works,* 13 Ves. 428 ; and within the exception in *Doloret* v. *Rothschild,* 1 Sim. & Stu. 590, where the vice chancellor said that " where a court of equity holds that time is not of the essence of a contract, it proceeds upon the principle that, *having regard to the nature of the subject,* time is immaterial to the value, and is urged only by way of pretense and evasion ; " and is illustrated by the case of *Winthrop* v. *Murray,* 8 Hare 214, where a debtor who had contracted that his creditor should have the security of an uninterrupted life insurance, was

held not entitled to relief against the forfeiture incurred by the omission to pay the premium for the space of four days after it fell due.

The volumes of reports afford no case, except that of *Austin* v. *Austin*, 9 Vt. 420, where compensation has been decreed for such a breach. And that case is superseded by that of *Dunklee* v. *Adams*, 20 Vt. 421; for the suggestion that the decision in *Austin* v. *Austin* may have been justified by the *form* of the contract, is evidently unfounded, since in every case reported the relief has been granted or denied not upon the *form* of the agreement, but upon the consideration whether the breach did or did not admit of *compensation;* which again resolves itself into the question, whether *time* is of the essence of the contract.

But the contract between the parties, and upon which the bill is based, was not one of mortgage. There was no pre-existing debt, and the deed contains no words of covenant upon which a suit could be maintained at law; *Culver* v. *Sisson*, 3 Comst. 264. The case shows a transfer of the estate from Ellis Tupper to Benjamin Tupper, and a re-transfer of the same estate, reserving the present right of possession, to enable Benjamin Tupper to perform the acts specified, and the right of possession to become absolute if those acts were performed. It was substantially a contract that Benjamin Tupper might purchase the land by the performance of certain acts; and in this respect was equivalent to a sale, with a right to repurchase. For the contract is always so construed where there is a pre-existing debt which is extinguished in the present tense by the transaction, so that no debt remains having a previous existence for which the deed can stand as security. In this case the same result is attained. There was no debt existing at the time the deed was executed, and therefore the relation of the parties was the same as though there had been a previous debt, which was then extinguished. The deed, therefore, did not stand as security, for the reason that there was nothing to be secured. The duty was created by the deed itself, and, apart from the deed, had no existence. These principles are sustained by the authorities. In Com. Dig. Chancery, 4 A. 1, a mortgage is defined as "a pledge or security *for money.*" In 4 Kent 134, it is said to be " the conveyance of an estate by way of pledge

*for the security of debt,* and to become void *on payment of it."* In 2 Bl. Com. 135, it is said to be "where a man borrows of another a specific sum, *e. g.,* two hundred pounds, and grants him an estate in fee, on condition that if he, the mortgagor, shall repay the mortgagee the said sum of two hundred pounds on a certain day mentioned in the deed, that then the mortgagor may re-enter," &c. It *Catlin* v. *Chittenden,* Brayt. 163, the conveyance was held a mortgage because showing that the land was held by the plaintiff *"as security for a pre-existing debt."* In *Campbell* v. *Worthington,* 6 Vt. 453, the point of inquiry, to determine the question whether mortgage or not, irrespective of forms, is said to be, whether "the real object be the taking or holding land *for the security of a loan or debt;"* and this inquiry determined the case of *Wright* v. *Bates,* 13 Vt. 349. In *Baxter* v. *Willey,* 9 Vt. 280, it is said to be well settled that "a court of equity will treat every contract *for the security of a debt* by conveyance of real estate," as a mortgage ; that "if, on a sale of land, there be a *bona fide* condition of re-purchase, or *avoidance of the sale,* it is valid ; but if the debt be not *extinguished in the present* ter use, it will be treated as a mortgage." In *Conway's executors* v. *Alexander,* 7 Cranch 218, where A advanced money to B, and B thereupon conveyed land to trustees, in trust to convey the same to A in fee, in case B should fail to repay the money and interest on a certain day, and B failed to repay the money on the day limited, and thereupon the trustees conveyed the land to A, it was held that B had no equity of redemption, and Ch. J. MARSHALL said: "It is a necessary ingredient in a mortgage that the mortgagee should have a remedy against the person of the debtor. If this remedy really exist, its not being reserved in terms will not affect the case. But it must exist, in order to justify a construction which overrules the express words of the instrument. Its existence, in this case, is certainly not to be collected from the deed. There is no acknowledgment of a pre-existing debt, nor any covenant for repayment. An action at law for the recovery of the money certainly would not have been sustained." And in *Moore* v. *Esty,* 5 N. H. 479, where the condition of the deed was for the performance of the condition of a bond for support it was held no

mortgage. The case, then, is not affected by the statute of this state allowing the mortgagor to redeem at law.

But if the definition of a mortgage is to be enlarged so as to include deeds with condition for the performance of some contract other than the payment of money, it yet must be for the performance of a contract where the damages are capable of computation by the court, and so be equivalent to a condition for the payment of money ; and this leads to the same question in respect to this deed already examined.

Equity never interferes except where the thing can be specifically done, as in the case of rent or payment of a sum of money, GRAHAM, B., in *Bracebridge* v. *Buckley*, 2 Price 231. And whenever relief has been sought, it has been accompanied with an offer to perform the very act required, as to repair, insure, &c., and make amends for the lapse of time. But here the act cannot be performed ; and the relief prayed is, that the court will make a new contract for the parties, and compel the mortgagee to receive something which he never contracted to receive.

And even if the nature of the condition were such that its breach were held capable of compensation, the orator is not entitled to relief; for he does not state that the forfeiture was incurred as the result of fraud, accident, mistake or surprise ; and the current of modern authorities limits the interference of courts of equity for relief against forfeiture to cases of this character ; 2 Story's Eq. 555, sec. 1323 ; *Baxter* v. *Lansing*, 7 Paige 352 ; *Eaton* v. *Lyon*, 3 Ves. 692, 695 ; *Rolfe* v. *Harris*, 2 Price 222.

The orator, Henry, is subject to all the liabilities, and affected with all the legal rights which attach to the contract, as against his grantors, Benjamin Tupper and David Aikens ; and he can claim no rights or equities, as against the mortgagee, which they could not have asserted.

The opinion of the court was delivered by

REDFIELD, CH. J. This case seems to involve the naked question, whether the grantor of land on condition of defeasance, if he fail to fulfill the covenant annexed to the deed for the support and maintenance of the grantee, can be relieved, in equity, from

the failure to perform such condition; and if so, whether this is matter of course, and under all circumstances, in courts of equity; and if not, under what particular circumstances such relief will be granted.

It is claimed upon both sides, that this court have determined the question in their favor. The plaintiffs rely upon *Austin* v. *Raymond*, 9 Vt. 420. This case was brought by the grantee for the purpose of foreclosing any equity in the grantor, after non-performance of a condition to afford maintenance. His bill, therefore, must assume that the defendant had still some equity in the premises, so that the question did not* strictly arise in the case. But the judge, in giving the opinion of the court, says it had been raised by counsel, and he intimates an opinion upon it: "There is certainly no difficulty in making compensation for past maintenance, any more than in any case of contract to perform services." And it is added that an assignee or subsequent mort-gagee may be admitted to perform the contract in future.

And the defendant claims that the case of *Dunklee* v. *Adams*, 21 Vt. 421, has overruled the case of *Austin* v. *Raymond*, and determined the question in his favor. The opinion of the judge delivering the opinion in that case, from a thorough review of the authorities, is expressed somewhat decidedly against the power of the courts of chancery to grant relief in such cases. But in con-clusion he says: "It is not intended to decide the case upon this ground," but upon the circumstances of that particular case. This must leave the authority upon this subject much as before, upon the case of *Austin* v. *Raymond*. And although we are not satisfied that the point was necessarily involved in that case, and it is certain the authorities are not much examined there, still the profession and the people of the state have, perhaps, to some extent, regarded that case as having settled the question in the state. But it seems to us the matter is still so far open that it is expedient to examine it in detail, and determine it, if possible, upon principle and authority.

The deed seems to us to be in form substantially a mortgage. It is a deed, subject to defeasance by the non-fulfillment of a con-dition subsequent. And that is all there is in any mortgage. At law the estate is gone forever, strictly speaking. The estate, by the terms of its creation, could only exist so long as, and upon the

performance of the condition. That failing, the estate lapses and is gone.

But equity, as a general thing, will relieve the party from such a forfeiture. It will do it in all cases, it is said, *where compensation can be made;* 2 Greenl. Cruise 36, sec. 29.

Chancellor KENT lays down the rule in regard to relief in such cases, that it is confined to cases where the forfeiture has been the effect of accident, and the injury is capable of compensation; *Langston* v. *Tompkins,* 4 Johns. Ch. 431, citing *Rolfe* v. *Harris,* 2 Price 207 ; *Bracebridge* v. *Buckley,* 2 Price 200 ; and this seems to be putting the matter upon reasonable grounds.

But if the matter is really capable of compensation, it is more doubtful, perhaps, whether the cases will warrant any denial of relief, upon the ground that the forfeiture was not the result of accident. It is certain no such thing is required to be shown in the naked case of a pecuniary debt. The non-payment may be willful, and the party is still entitled to relief, as matter of right. But the case of *Dunklee* v. *Adams* seems to have settled the question in this state, that relief for non-performance of collateral duties is matter of discretion in the courts of equity, to be judged of according to the circumstances of each particular case.

And in *Hill* v. *Barclay,* 18 Vesey 56, which is a very elaborate case upon this point, although the chancellor, Lord ELDON, says a great deal about the difficulty of making compensation, in money cases even, and shows very clearly that the payment of money and interest, in most cases, is no compensation for not having it when due, and so shows pretty conclusively, I think, that there is no settled principle in the books in regard to what cases the court will relieve from forfeiture, and what cases they will not ; and that, after all, it does not depend so much upon the difficulty of making compensation as upon other circumstances often. Lord ELDON says if the covenantee offers to overlook the forfeiture, there would seem to be no difficulty in allowing subsequent performance of a specific act, as making repairs. But " if the tenant still refused, upon what ground," asks his lordship, " having willfully refused and violated all his covenants, could he desire a court of equity to place him in exactly the same situation as if he had performed them ? ". And this point of willful neglect and non-performance is

many times referred to in that case as an invincible obstacle to relief. These two points seem to me to have been very generally mixed up most inextricably in the equity decisions upon the subject. In cases where the condition is for the payment of money, or for the performing of a certain value of services, expressed in currency as one hundred dollars of necessary repairs upon buildings leased, it has been, I think, the more general practice of the court to grant relief as matter of right, without reference to the inquiry whether the default was accidental or willful. But in all cases where the thing to be done was something collateral, where the issue *quantum damnificatus* must be sent either to a jury, or masters, before the court could grant relief, they have pretty generally, I think, required to be satisfied that the omission to perform was not willful but accidental and by surprise, and it has been held always in such cases to depend very much upon the circumstances of the particular case. That relief might be granted in equity, even where the condition was for the performance of collateral acts, seems to be admitted in most of the cases upon this subject ; *Webber* v. *Smith*, 2 Vernon 103 ; *Hack* v. *Leonard*, 9 Mod. 90 ; *Cox* v. *Higford*, 2 Vernon 664 ; *Saunders* v. *Pope*, 12 Vesey 282. These are cases of non-repair of premises leased ; and the chancellor, Lord ERSKINE, says in the last case, " I cannot agree it is necessary the non-performance of the covenant should have arisen from mere accident or ignorance." The cases are abundant where relief has been granted against forfeiture of title by non-performance of other collateral acts, as for not renewing a lease ; *Rowstone* v. *Bentley*, 4 Br. C. C. 415 ; or for cutting down timber when covenanted against, on pain of forfeiture ; *Northcote* v. *Duke*, Ambler, 511 ; *Thomas* v. *Porter*; 1 Ch. Ca. 95. But it has been held relief will not be granted where the forfeiture arises from an act incapable of compensation, although of no essential damage to the other party, as the breach of a condition not to assign ; *Wafes* v. *Mocato*, 9 Mod. 112. The same rule obtains where the forfeiture arises from an omission to insure ; *Rolfe* v. *Harris*, 2 Price 206.

Judge STORY inclines to the opinion, that in the English Chancery this relief is more sparingly granted of late than formerly, especially in cases beyond the payment of money *eo nomine ;* but thinks, as every one must, that there is no just ground for confining

it to so narrow limits, and thus to deny relief in all cases where the failure is in regard to some collateral act, capable of definite estimation by a master or a jury; but concludes the present English rule is confined to granting relief for non-performance of covenants, where the breach occurs from " accident, mistake, fraud or surprise, although the breach is capable of just compensation." But the cases which he cites upon this point are in Vesey and earlier, most of them; and result from Lord ELDON's criticisms chiefly, which we have before alluded to, but which he did not himself act upon to the full extent; *Reynolds* v. *Pitt,* 19 Vesey 140, 18 *id. supra.*

It seems, however, to be pretty well established in England, that relief for non-repair of premises will not be granted as matter of course, and especially when there was a willful default; *Bracebridge* v. *Buckley,* 2 Price 200; *Hill* v. *Barclay,* 16 Vesey 402 and 18 *id.* 56. But where the failure is from " accident, fraud, surprise or ignorance not willful," relief will be granted; 2 Lead. C. in Equity, 464, 465 ; *Eaton* v. *Lyon,* 3 Vesey 693; the result of all which seems to be, that there is no well settled rule upon the subject, or none which is not liable to considerable variation, and to be affected by the circumstances of the particular case.

It certainly cannot be maintained, from the authorities, that relief is, in all cases, limited to the non-payment of money. Nor is there any principle whereby it can be made to appear that such cases are the only ones where compensation can be made. Many collateral duties are just as susceptible of compensation as a covenant to pay money, as undertakings to deliver goods, to repair premises, or to afford support even; for in all these cases the non-performance, at the time, is not fully compensated by the payment of the same value and interest at an after time. The non-payment of a sum of money, at a particular time, may, under circumstances, be ones ruin, and at others it may be a positive benefit, if the interest be subsequently paid; and so of any collateral duty. And in regard to this support, it is no doubt capable of being stated in strong terms, and quite consistent with supposable emergencies. But the case would not be different, in fact or in principle, if it was a stipendiary sum in money, for the purposes of support, either in fact or in terms expressed in the contract.

But the apprehension that this equitable relief shall be absolutely confined to cases of pecuniary debts, is certainly presenting a very shortened view of the range of equitable principles. Such a limit, to be held absolutely binding in all cases, would certainly look like an evasion of just and reasonable discretion.

But we must all feel that cases of the character before the court should be received with something more of distrust, and relief afforded with more reserve and circumspection, than in ordinary cases of collateral duties. And although we are not prepared to say that it must appear that, in all cases, the failure arises from surprise, or accident, or mistake, we certainly should not grant relief when the omission was willful and wanton, or attended with suffering or serious inconvenience to the grantee, or there was any good ground to apprehend a recurrence of the failure to perform, as was held in *Dunklee* v. *Adams*, 20 Vt. 421.

But in the present case nothing of this appears on this demurrer; but, on the contrary, it is alleged that the orator was surprised at the finding of the jury that the condition of the deed had not been fully performed by Aikens and others. It does not very distinctly appear when the failure did occur, whether before or after the conveyance to the orator, nor is it very material, perhaps, except in regard to the proof of motive in the orator and his claim to relief.

The court very readily admit that the subject under consideration may admit of many cases where no relief should be granted in equity. This very class of cases will afford abundant illustrations of the essential necessity and manifest propriety of holding the subject under the control of the courts of chancery, and making the relief dependent, to some extent, upon circumstances. The case might occur where the refusal to afford daily support would be wanton and wicked: indeed, where it might proceed from murderous intentions even ; and it is even supposable that the treatment of those who were the objects of the services, should be such as to subject the grantor to indictment for manslaughter, or murder even, and possibly to ignominious punishment, and to death. To afford relief in such a case, for the benefit of the heirs, would be to make the court almost partakers in the offense.

And the case, upon the other hand, is entirely supposable and of not infrequent occurrence, where, through mere inadvertence, a

technical  breach  may  have  occurred  in  the  non-performance of
some  unimportant  particular,  in  kind  or  degree,  where,  through
perhaps  mere  difference  in  construction,  or  error  in  judgment, one
may  have  suffered  a  forfeiture  of  an  estate, at  law, of  thousands of
dollars  in  value, where  the  collateral  service  was  not of one dollar's
value,  and  attended  with  no  serious  inconvenience  to  the  grantee.
Not  to  afford  relief  in  such  case  would  be  a  discredit 'to  the
enlightened  jurisprudence  of  the  English  nation  and  those  Ameri-
can  states  who  have  attempted  to  follow  the  same  model.

 Decree  of  chancellor  reversed. Demurrer  overruled. Case
remanded.