## ABBOT *v.* BANFIELD.

A mistake in the publication of a notice for the purpose of foreclosing a mortgage, in substituting the word mortgagee instead of mortgagor, is material, because liable to mislead, and such publication does not constitute a legal and requisite notice in such cases.

Where the mortgagor makes a tender for the redemption of the mortgage, and by mistake a California gold piece, estimated at $20 is embraced in the specie so tendered, a court of equity, in their discretion, can grant relief and prevent the forfeiture of the estate upon a full compensation to the mortgagee in the form of a subsequent legal tender of the debt and interest, and full costs of the proceeding.

*Heywood*, for the plaintiff, argued for the plaintiff, and quoted the following authorities, namely, *Avery* v. *Kellogg*, 16 Conn. 562; *Williamson* v. *Dale*, 3 Johns. Ch. 290; *Hall* v. *Dowle*, 28 Vt. 85; *Henry* v. *Tupper*, 29 Vt. 358; *Pierson* v. *Cloyes*, 15 Vt. 93.

*Benton & Ray*, for the defendant, cited the following cases: *Bailey* v. *Metcalf*, 6 N. H. 156; *Goss* v. *Emerson*, 23 N. H. 41; Pamphlet Laws, ch. 1531, sec. 1.

NESMITH, J. This was a bill in equity, wherein the plaintiff alleged that he was owner of an equity of redemption in a certain farm situated in Stratford, in this county, being lot No. 145, and known as the Grist-mill lot, in said town; that said farm, July 9, 1857, was subject to a certain mortgage made by one David Polley, a former owner, to David Sloan, of Haverhill; said mortgage deed bearing date May 5, 1835, conditioned to be void upon the payment to Sloan of Polley's promissory note of that date, for the sum of $114.12, payable to Sloan, or order, on demand, with interest from date; that April 22, 1857, Sloan assigned said note and mortgage, in due form and for good consideration, to David E. Banfield, of Stratford, who entered thereon, and took possession, and occupied the premises up to the filing of the bill, and received the rents and profits of said farm, of the yearly value of $50, and took other large quantities of wood and timber of the value of $200; and that Banfield, after taking possession of said farm, caused a certain notice, intended to be in conformity to law, to be published in the Coos County Democrat, a newspaper published in said county, in the numbers dated May 27, June 3, and June 13, 1857, purporting to state that he had taken possession of said land to foreclose said mortgage; that the plaintiff, intending to redeem said land from said mortgage, procured bills of the White Mountain Bank, at Lancaster, and went to said bank to procure the specie to make a legal tender of the amount due on said mortgage; but among the coin thus procured to make said tender, was a certain California gold piece, purporting to be of the value of twenty dollars, which the plaintiff received from said bank, and July 9, he made a tender of the sum of $266.05 to Banfield, all of which was current gold coin of the United States, except said twenty dollar gold piece, and five cents in silver; and said sum, so tendered to said Banfield, was the full amount due on said note, without any deductions for rents and profits, or for wood and tim-

ber so cut, and that Banfield refused to receive the same, but not for the reason that a portion of it was not legal currency. The plaintiff alleged that said California gold piece contained gold of the value of twenty dollars, and it was by mistake, and because the plaintiff was not aware that said gold piece was not a good and sufficient tender that the same was offered in making the tender to Banfield; that the plaintiff again, October 4, 1859, offered and tendered to Banfield the sum of $291.33, in legal coin of the United States in payment of said note for the redemption of said mortgage; and that said farm is and was, July 9, 1857, of the value of $1200, and that he would suffer great loss if he could not be permitted to redeem the same; that Polley hath long since deceased; that said rents and profits, as received, and the value of the wood and timber as taken would pay the greater part of said note with interest; and that the plaintiff had frequently applied to Banfield to have him receive the amount of the note and interest in discharge of the mortgage.

The bill also charged upon the defendant the purpose and intent to injure the plaintiff, by refusing to receive the amount of said note and interest thereon, and by pretending that said mortgage is duly foreclosed, and by claiming to hold the said farm free from all right of redemption : whereas the plaintiff averred that the mortgage had not been duly foreclosed, and that, if he failed to make a proper tender in payment of said mortgage, the same occurred by mistake, and he had at all times been ready to pay the same, and prayed that the defendant might answer, and that an account might be taken, under the direction of the court, of the rents and profits of the farm, and of the wood and timber, as received by the defendant; also of the sum due on the note, and that upon the payment of the balance, if any found due upon the mortgage, the plaintiff might be permitted to redeem the premises, and that Banfield might be decreed to deliver up possession of said premises free from all incumbrances.

David Sloan, having been made a party to the bill, admitted in his answer that David Polley, being owner of said lot of land, No. 145, in Stratford, conveyed the same in fee and in mortgage to said Sloan on or about May 5, 1835, to secure the payment of a certain note for $114.12, and that afterward, in the fall of 1851, he requested one Cyrus C. Carpenter to take possession of said lot for him, and hold it peaceably under said mortgage, and that he believes Carpenter did, December 11, 1851, take possession of said lot, and hold and retain possession of the same under said mortgage, up to the time when he sold and assigned said note and mortgage to Banfield; denied that he, or any person for him, has received any rents or profits, or that the farm has yielded any, or that he or Carpenter took wood or timber of any value from said premises; averred that he assigned and transferred said note and mortgage to Banfield on the 22d day of April, 1857, and he believed that Banfield took possession of said premises; but of this fact had no knowledge, or of the other facts embraced in the plaintiff's bill.

Banfield, in his answer, admitted that, July, 1857, the said lot of

land was subject to the mortgage, and that the said note and mortgage were duly assigned by Sloan to himself at the time mentioned in said bill; averred that he forthwith took possession of the premises, and occupied and resided upon them; denied that he had knowledge of Sloan's possession, or the reception of rents and profits, or the taking of any wood or lumber from said lot by said Sloan or by his tenant; that the plaintiff is the owner of the equity of redemption in said premises, or that he has any lawful right thereto; averred that on said April 22, he took peaceable possession of said premises for the purpose of foreclosing the equity of redemption therein, and continued in the actual and peaceable possession thereof for the space of one year and more from that time, and caused to be published in the Coos County Democrat, in the numbers respectively of May 27, June 3, June 10, June 17, June 24, and July 1, 1857, a notice in due form of law, stating the time at which such possession taken for condition broken, commenced, the object of such possession, the name of the mortgagor and of the mortgagee, the date of the mortgage, and a description of the mortgaged premises; either publication of said notice being at least six months before the equity of redemption thereof would be foreclosed.

He also denied that the plaintiff tendered him the sum of $266.05, on July 9, 1857, or at any other time before the right to redeem said premises was foreclosed; admitted that Hiram Lucas, in company with the plaintiff and others, on or about said July 9, came to the defendant's house, and offered him $262.65 as the amount then due upon said mortgaged note, and no more, which the said defendant declined to receive, without disclosing his reasons; admitted that the plaintiff subsequently tendered to him, on or about October 4, 1859, the sum of $291.30, in lawful United States currency, and that he then and there refused to receive it; denied that said farm was worth $1200, alleging that it was destitute of fences, yielding no income or profits when he took possession of it; averred that since he supposed he was the sole owner, he had in good faith expended large sums of money in erecting buildings, fences, and in making other permanent improvements upon said premises, thereby advancing the value of the farm; denied taking any wood or timber therefrom, except such decaying wood as he needed to use for his fire, or that the amount of rents and profits of said farm, during his occupation thereof, would equal the value of his labor and expenses in carrying on the farm; admitted that David Polley had long since deceased; averred that the plaintiff would not suffer much if any loss if he were not allowed to redeem said premises; that the heirs-at-law of David Polley refused to redeem said premises, and abandoned the same altogether, alleging that they would not redeem them, and that the defendant would now enjoy said premises unmolested, were it not for the evil propensities and mischief-making character of the plaintiff; and that the plaintiff had purchased the interest of said Polley intending to harrass and oppress the defendant, and deprive him of a home, &c.

The evidence showed that Sloan, April 22, 1857, in due form of law, assigned the note and mortgage to the defendant Banfield for

the consideration of $165; that Banfield, for the purpose of fore-closing the equity of redemption therein, on the 25th day of the same month, in presence of two witnesses, entered into possession of the premises embraced in said deed of mortgage, and continued in the actual possession of the same ever after.

The plaintiff claimed title, as purchaser of the equity of redemp-tion, of the aforesaid mortgage, under and by virtue of conveyances from the widow and heirs of David Polley deceased; the consider-ation of these several conveyances paid by the plaintiff not being shown to exceed $100.

The present parties in this case occupy the position as assignees and representatives of the original mortgagee and mortgagor. David Sloan is dead. The evidence does not show that, in his life-time, he perfected a legal foreclosure of this mortgage from Polley, nor does the evidence show that Polley or his heirs have acquired, through lapse of time, or otherwise, the benefit of a presumption of title in himself or heirs. There does not appear to have been any such possession or title established under the original parties to the mortgage, as should operate either as a bar or as a protection to the present claimants. 2 Story Eq., sec. 1027, 1028, and note; *Tripe* v. *Marcy*, 39 N. H. 439. As the case stands, both parties treated the mortgage as an existing living incumbrance as late as June, 1857, and neither party can consider it a stale claim. 13 Pick. 393.

The evidence of the defendant further tends to show that imme-diately after his entry of April 25th aforesaid, he caused to be published in the Coos County Democrat, a newspaper printed at Lancaster, in this county, a notice of his entry for the purpose of perfecting his foreclosure, which was inserted in said newspaper under the dates of May 27, June 3, June 10, and June 17, of the year 1857. The object was to make the publication agreeably to the requisitions of section 1 of chapter 1531 of the Pamphlet Laws. The advertisement, however, contained a mistake; the word mort-gagee being wrongfully substituted and printed for the word mort-gagor. The notice stated " that the defendant entered for condition broken, and for the purpose of foreclosing the right in equity of the said mortgagee, his heirs, executors, administrators or assigns, and all persons claiming under or representing him." The word mortgagee should have been printed mortgagor.

It should also be noted that by another section of the same statute, requiring the publication of notices for this purpose, that such con-struction is to be put upon the words mortgagor and mortgagee, that they shall be understood to include any person claiming under or representing him.

It is suggested in argument that the error in the publication should not be regarded as material; but the general doctrine, both in legal and equitable proceedings, seems to be, where a statute directs the publication of notices having reference to personal rights or property, the requirements of the statute are to be strictly pur-sued. Nothing that can be reasonably made certain and definite is to be disregarded. So in relation to legal process, tax titles, laying out highways, &c. 6 Cushing 256; 28 Miss. 354; *Gray* v.

*May,* 16 Ohio 66. The party may not have been misled by the notice as published; it is sufficient that it did not conform to what the statute did require, and that its tendency was to mislead the reader or him who was directly interested to redeem the mortgage. The publication can not be, therefore, adjudged a sufficient compliance with the law in this case.

Was the tender, as made by the plaintiff, for the purpose of discharging the mortgage existing upon the estate, sufficient in this case? The weight of evidence appears to establish the fact clearly that $266.05 was the amount tendered by the plaintiff in presence of Lucas, McIntyre, and Richey; and this was sufficient to pay the whole amount due on the mortgage, provided the California gold piece for $20 be reckoned at its assumed value of $20. The aforesaid tender was made July 9, 1857. The money had been procured at the White Mountain Bank for the purpose of making said tender, and was delivered to the applicants by the cashier, Mr. Williams, one of the defendant's counsel, as appropriate legal currency for the intended and avowed purpose of making a legal tender. The same money, after the tender was made, was again deposited with Mr. Williams, the cashier of the bank, upon notice to Banfield, that he might there find his money or his tender. The plaintiff, making his tender innocently, supposed at the time of said tender, the California gold piece legally represented what it purported to do, namely, $20. It is to be presumed here that the cashier intended to act in good faith, as well to the plaintiff as to the bank. The bank was a specie-paying institution, and its own bills were exchanged for this tender. There was doubtless no intention to pay out coin which was at a discount. Some time after the tender had been made to the defendant, and the money had been deposited at the bank, Mr. Williams discovered that the California gold piece made a part of it, and notified the plaintiff accordingly. No objection to the tender had been made by the defendant, at this time, on account of the quality or character of the coin. The defendant only wished to consult Mr. Williams as counsel, and asked for time for that purpose, when said tender was made. After the money was deposited at the bank, under the circumstances of the case, it can not be presumed that the bank would suffer either party to incur a loss by the deficiency in the coin. Here, at most, was a mistake, and the material question recurs, whether the court can give a remedy in such cases.

In England, courts of equity relieve against the non-payment of money payable on a day certain, as in the common case of a bond for the payment of money, or of a mortgage debt where the title of the mortgagee becomes absolute at law, and the court is in the constant habit of relieving against the lapse of time. Courts relieve where the thing may be done afterward, or when a compensation can be made for it. 1 Mad. Ch. 31, 32, and cases in note. Upon a bill of foreclosure, the court will, though with regret, as the mortgagee is often a great sufferer by it, enlarge the time for the payment of the mortgage money (*Novosielski,* v. *Wakefield,* 17 Vesey 417) for six months, for payment not only of the principal, but of the inter-

est and costs; *Ismond* v. *Claypool*, Ch. Rep. 262; again, for three months upon paying the interest and costs; *Markham* v. *Corp. of Bedford*, 17 Vesey 382.

In the case of *Edwards* v. *Canliffe*, 1 Maddox 287, the court made four orders giving further time, though the third was peremptory, there being extraordinary difficulties in raising money at that period. The construction of covenants is the same in equity as at law; but the performance of them is treated very differently. At law, a covenant must be literally performed; in equity, it is sufficient, if it is really and substantially performed, according to the true intent and meaning of the parties, so far as circumstances will admit; and if, by unavoidable accident, or by fraud, surprise, or ignorance, not willful, parties have been prevented from executing their covenants literally, a court of equity will interfere, and upon compensation being made, will give relief. And, in the purchase of an estate, if money has been covenanted to be paid at a given day, if it is not paid at the day, an action will lie; but if the party can show that he took the means of paying it, and has been prevented by accident not in his power, the court of chancery will dispense with the strict performance of it, because, as it was formerly said, time is not of the essence of the contract; but it may be, and the party can not avail himself of equitable circumstances, unless he show there has been no willful neglect or misconduct on his part. *Eaton* v. *Lyon*, 3 Ves. Jr. 692; 1 Madd. Ch. 34; *Rolfe* v. *Harris*, 2 Price 200. Chancellor Kent lays down the rule that it is confined to cases where the forfeiture has been the effect of accident, and the injury is capable of compensation. *Langston* v. *Tompkins*, 4 Johns. Ch. 431.

In the case of mortgages, courts of equity constantly allow a redemption, although there is a forfeiture at law. Judge Story remarks, " Relief is generally granted where an inequitable loss or injury will otherwise fall upon a party from circumstances beyond his own control, or from his own acts done in entire good faith, and in the performance of a supposed duty." 1 Story Eq., sec. 89, and note; also 1313, 1316; Mitf. Eq. Pl. 130; also the case of *Henry* v. *Tupper*, 29 Vt. 372. The whole question involved here is well considered in the latter case. The true foundation of the relief in equity, in this class of cases, is, that as the penalty is designed as a mere security, if the party obtains his money or his damages, he gets all that he expected, and all that in justice he is entitled to. So interest for the delay of money at the time stipulated to be paid, is not always regarded an adequate compensation, but is still held as the most just and uniform remedy that can be adopted as compensating the creditor for delay. 2 Story Eq., sec. 1316, note.

Hence we arrive to the conclusion that the plaintiff may be considered as entitled to relief, it having been made to appear by evidence, that before bringing this bill, namely, October 4, 1859, he caused to be tendered to the defendant all that was due him on his mortgage, $291.33 in legal coin, which sum is now brought into court. The plaintiff may have been guilty of some degree of negligence in not renewing or perfecting his tender, after he learned his mistake in relation to the California gold piece. It does not, how-

ever, appear that the defendant placed his objection to the tender upon that ground, but rather that the sum of $262.65, and no more, was actually tendered by Lucas and others. But the evidence on this point being decisive in favor of the tender of the larger sum, estimating the gold piece at its par or full value, and that the plaintiff was acting in good faith, and that a mistake existed without intentional fault on his part, and the equity of redemption having been shown to be of considerable value, the whole farm being shown to be worth $1000 or more, we are, therefore, inclined to the opinion that the plaintiff should now be entitled to a decree that he have possession of the premises named in the bill, that Banfield be entitled to the amount tendered as aforesaid in 1859, unless the parties should desire to go into an account of the rents and profits received by the defendant, and the wood and timber cut by him, deducting the taxes paid by him and assessed on said estate, and the value of such permanent improvements as could be taken properly into account. If either party request such accounting, then the bill, answer and evidence may be referred to a master for his report. If the mortgagee has made disbursements for repairs above the amount of rents and profits, the court is to make the computation. *Parsons* v. *Wells,* 17 Mass. 419. See, also, 1 Washb. on Real Prop. 589; *Boston Iron Co.* v. *King,* 2 Cush. 400; *Deming* v. *Cummings,* 11 N. H. 474; *Smith* v. *Jewell,* 40 N. H. 531.

The question of costs is also raised here. If it shall appear that both sides are in fault, the court will not give costs to either party. *Clark* v. *Reed,* 11 Pick. 446; *Saunders* v. *Frost,* 5 Pick. 150. It is to be observed that at law, after a mortgagee is forfeited, the estate is the absolute property of the mortgage, and he may deal with it as his own; he may sell it, incumber it, or devise it. If, therefore, the mortgagor apply to a court of equity for redemption, it is only granted upon the terms of indemnifying the mortgagee from all costs arising out of his legal acts. Therefore a mortgagor, filing a bill to redeem, must pay the legal costs, not only of the mortgagee himself, but of all persons claming under him. *Wetherell* v. *Collins,* 3 Madd. 255. The same rule applies to a foreclosure as well as a redemption. In either case the mortgagee is entitled to his principal, interest, and costs. 3 Dan. Ch. Pr. 1580. Legal costs here do not in this case embrace the expense of the publication of the notice, as that is not shown to be a legal notice.