STEPHEN RICKER *v.* BLANCHARD & BROTHER.

A demand upon a mortgagee of the amount due, made by an officer holding an execution against the mortgagor, and merely stating that he is about to levy upon the land mortgaged, is not valid under the statute; but it should disclose the fact that a levy or attachment had been made, and a right to redeem thus acquired.

Nor is the defect in the demand waived by the mortgagee, by rendering an imperfect account within the time limited by law.

Where the right of redemption is sought to be foreclosed by an entry and possession for one year, the day of the entry is not to be included in the computation of the time; and where the entry was October 3d, 1859, a tender on the third day of October, 1860, is within the year.

Where a subsequent mortgagee tendered to the assignee of the prior mortgage the amount paid by such assignee, supposed to be the full amount due thereon, and the party making the tender in good faith so understood it and intended to pay the whole sum, and no objection on that account was made by the assignee, a court of equity will relieve against a forfeiture claimed for the reason that the amount tendered was less, by a trifling sum, than the amount really due; provided full compensation can be made.

THIS is a bill in equity brought by Stephen Ricker against Blanchard and Brother, the assignees of a mortgage of lands in Manchester, made by David Ricker to the Trustees of the Manchester Loan and Fund Association. The plaintiff claims by virtue of a subsequent mortgage by said David Ricker of the same lands, and the bill is brought to redeem those lands from the mortgage now held by the defendants.

From the bill, answers, and proofs, it appears, that, on the thirteenth day of June, 1856, David Ricker mortgaged these lands to the Trustees of the Association aforesaid to secure the payment of $30.70 per month during the existence of the Association, and of all fines that might be charged to said David pursuant to its articles, with other stipulations not necessary to mention; that, afterwards, on the tenth day of October, 1856, the said David Ricker mortgaged the same lands to the plaintiff, to secure the payment of his note to the plaintiff of $300.00, with interest, which is still due and unpaid; that, at the April Term, 1859, in Hillsborough county, these defendants recovered a judgment against said David Ricker and his partner, one Godfrey, in a suit in which these lands were attached, for the sum of $1687.71, damages, and $30.56, costs; that execution was issued thereon and delivered to Daniel L. Stevens, a sheriff's deputy, for service; that, on the twenty-fifth day of July 1859, the officer, then resident at Manchester, sent to the plaintiff through the Post Office, to Dover, in this State, where the plaintiff then resided, a writing signed by the officer, stating that he had in his hands this execution and was about to levy it upon this land, and demanding of him an account on oath of the amount due on the plaintiff's mortgage; that an account was rendered within fifteen days, but being deemed to be imperfect, the officer proceeded to sell the equity of redemption at auction, and the defendants became the purchasers, the avails being applied in part satisfaction of the said execution.

It further appeared, that, on the 3d day of October, 1859, the Association entered upon and took possession of the mortgaged premises for condition broken and for the purpose of foreclosing the right of redemption; and that this possession was retained and duly advertised until September 27th, 1860, when the defendants paid to the Association the amount claimed by it to be due on the mortgage, viz: $1500.70 together with $10.00 for expenses of the entry, taking possession, &c.; that this was the amount standing on the books against the said David, and the amount then supposed to be due; and that the defendants entered into the possession of the premises and retained it until after the expiration of one year from the entry of the Association; that on the third day of October, 1860, the plaintiff tendered to the defendants, or one of them,

$1520.25 as and for the amount due on said mortgage including interest and expenses, which the defendant declined to receive, but without objecting to the amount, at that time or afterwards, before the bringing of this bill, and it appears that the plaintiff in good faith supposed he had tendered the full amount due, and that he intended to do so ; and that if the sum actually due was greater by eight or ten dollars than the amount tendered, as is now claimed by the defendants, the omission to tender it was by mistake or accident.

*Eastman & Cross*, for plaintiff.

This is a bill praying for the possession of a house and lot in Manchester, by virtue of a judgment and writ of possession in favor of this plaintiff, against David Ricker.

The plaintiff is, however, satisfied to take the amount of his judgment with costs.

David Ricker gave a mortgage to the Loan Fund Association, and then a subsequent mortgage to the plaintiff. The defendants, having a claim against David Ricker and his partner Godfrey, attached the mortgaged property and purchased the mortgage of said Association. The consideration of the plaintiff's note, secured by his mortgage, is proved by the testimony of both Stephen Ricker and David Ricker, and the judgment upon the same is shown by the certified copies in the case. There is no testimony casting a shadow upon the fairness and honesty of the plaintiff's claim. The defendants come and say that this claim of the plaintiff, although fair and honest, and although he held a good and legal mortgage prior to their attachment, yet, by a technicality or technicalities, they can destroy his claim, and themselves hold all the property.

The Loan Fund Association took possession for the purpose of foreclosure, October 3, 1859. Before this possession of the Association, the defendants had obtained an execution against Ricker & Godfrey, and sold David Ricker's right of equity in the property.

On the first day of October, 1860, the defendants purchased the mortgage of the Association.

On the third day of October, 1860, the plaintiff made a tender to the defendants of the amount due on the mortgage, which they held by assignment from the Association.

These are facts proved.

As to the amount of the tender, we say, that, as a matter of law, the plaintiff was not bound to tender as much as he did. The defendants, on the first day of October, 1860, paid the Association $1510.79, and, on the third day of the same month, the plaintiff tendered $1512.25.

As between the Association and David Ricker, according to a decision of this court in favor of this Association vs. Cyrus Dunn, he, being a member and bound by its rules, might be liable to that amount, but, as between these defendants and this plaintiff, we contend that the law of six per cent. interest would govern, and that the question of fines and monthly interest has nothing to do with the case. At the computation

of six per cent. interest, the amount of the tender would be less than $1500.

The two points made by the defendants are, as we understand it : First, Was the tender made before the foreclosure was perfected? Second, Was the demand of the Sheriff Stevens and the subsequent proceedings such, that the interest of the plaintiff in said real estate, was lost or "ceased"? The tender was in season. This is settled by chapter 1, section 25 of the Compiled Statutes, and by the whole current of decisions in regard to time. As to the demand, we say that no demand was ever made. It is deficient in form. There was no legal service.

The demand should have been personal. The sheriff should have gone to the plaintiff, and presented the demand, and then the plaintiff would have had the opportunity of making inquiry as to his authority to make the demand, or what property he referred to in his demand, and many other things. It would be more consistent for the sheriff to serve writs, and all other processes by mail, than such a demand as this.

The plaintiff receives by mail this demand. It does not inform the plaintiff where "Daniel L. Stevens, Deputy Sheriff," lives. It seems to be dated "Hillsborough ss., July 20, 1859."

Where is "Hillsborough ss?" As a matter of law we suppose it is in Goffstown, Greenfield and 28 other towns in Hillsborough County, if any where. The plaintiff, unaccustomed to legal technicalities, would examine his maps and books in vain to find the residence of this man Stevens, from an examination of the document he writes him. Where shall he send his answer?

The demand gives no description of the property he had attached. The demand informs the plaintiff that Daniel L. Stevens was about to levy on the real estate of David Ricker, in Manchester. What real estate?

The distance from Manchester to the residence of the plaintiff was 45 miles, and although it may seem strange to lawyers, yet the fact is in proof that the fame of "Daniel L. Stevens" as an officer, had never reached this plaintiff. He knew nothing of him. The plaintiff, however, unnecessarily as we think, did write Stevens a letter in answer. The answer, although not such as a lawyer would make, is, we submit, better than the demand.

The proof is, that, before the sale, the plaintiff did find this man Stevens, and deliver to him a full and definite account of the amount due on the mortgage, so that on the day of sale there was no doubt about it.

The proof is, that Stevens, at the auction, sold, subject to both mortgages, to the Association and Stephen Ricker.

Stevens does not pretend to testify precisely to what he stated at the auction. Stephen Ricker and David Ricker were both at the auction, and David Ricker made a memorandum at the time, giving the names of those present, and what Stevens said. (See answer to 13th interrogatory in David Ricker's deposition.) This shows the amount due on the mortgages, $1971.30, which includes the plaintiff's and that of the Association. The balance of testimony on this point is decidedly in favor of the plaintiff. We contend, therefore, that, even if the demand

was correct, and the answer defective, the defendants waived all this and sold the property, subject to the plaintiff's mortgage.

The positions we have taken in regard to the demand and answer, we think are sustained by *Farr* v. *Dudley*, 21 N. H. 373; *Phelps* v. *Gilchrist*, 28 N. H. 266; *Gilmore* v. *Gale*, 33 N. H. 410; *Dunklee* v. *Gay*, 39 N. H. 292.

*George Y. Sawyer*, (with whom was *I. W. Smith*,) for defendants.

I. The plaintiff had no right in equity to redeem the premises at the time of the tender made to the defendants—because, 1. His right was barred as against the defendants' attachment by the demand for an account of his claim and the neglect to render it in fifteen days; and because, 2. The foreclosure of the mortgage given by David Ricker to the Loan Fund was completed before the tender.

As to the first ground, the only objections to the demand relied on by the plaintiff, are that it was sent to the plaintiff through the post office and not presented by the officer in person, and that it gives no description of the estate attached.

It is entirely immaterial how the demand comes to hand, provided it is in such way that the party can answer. Here it was forwarded by mail, July 20th, and answered by the plaintiff, August 2d, within the fifteen days. If the account, placed in the post office, on that day, addressed to the officer, had been such as the law requires, the account would have been properly rendered whether it ever came to the hands of the officer or not. The plaintiff waived the objections which he now makes to the demand by answering within the fifteen days.

Having replied to the demand within that time, through the proper channel, the post office, to the proper address and in a way to show that he intended his answer should be taken as the account demanded, he ought not now to be permitted to object that he did not know the name, address, or official character of the party making the demand. The very eloquent flourish of the counsel, that, strange as it may seem to lawyers, the fame of Daniel L. Stevens as an officer had never reached him, if it is to be considered as any thing more than a rhetorical flourish, is flatly contradicted by the acts of the client.

As to the other objection to the demand, that it does not contain a description of the estate, the answer is that no particular description need be given. It is enough if the plaintiff knew, from what is contained in the demand, what estate was referred to. This he well understood from the description that it was "estate in Manchester subject to a mortgage to you."

It seems to be conceded that the account rendered within the fifteen days was insufficient. It is therefore immaterial whether a correct account was afterwards rendered or not. It is equally immaterial whether the officer stated at the time of the sale that the premises were or were not subject to the plaintiff's mortgage. If that mortgage lien " ceased" to exist because the account was not rendered, the officer making the

sale had no power to revive it. The purchaser of the equity takes it, subject to such legal claims as exist at the time of the sale, irrespective of any thing said or done by the officer at the sale.

If, however, his statement of the claims upon the estate were material, the proof shows, notwithstanding the negative evidence of the Rickers, that he sold the right in equity subject to such claims as might turn out to be valid. It cannot be supposed that he conducted so inconsistently with his letter of September 12th, as to declare that he sold subject to the plaintiff's mortgage as a recognized valid claim.

As to the other ground, that the foreclosure was completed before the tender, a foreclosure in the second mode specified in ch. 131, sec. 14, of the Revised Statues, is effected by peaceable entry after condition broken and " continued actual peaceable possession *for the space of one year,*" and the question here is whether there had been such possession for one year reckoning back *from the day or date of the tender.* Considering the question, for a moment, without reference to the provisions of ch. 1, sec. 25, of the Revised Statutes, there can be no doubt that the year's possession was complete on the 2d October, 1860. The possession on the 3d of October, 1859, was one day's possession of that year, and the year expired on the 2d of the same month the year following, otherwise there would be two days distinguished as the 3d of October within the same year. To hold that the first day on which the possession was held is not to be reckoned as a part of the year, is in effect to hold that there must be possession for one full year and one day over to complete the foreclosure, under the statute, which declares possession for one year to be sufficient; and we respectfully submit that the provisions of chap. 1, sec. 25, were not intended to apply to such case. The terms of that section clearly imply, that, in the cases contemplated by it, a particular day, date, act, or proceeding is specified, fixed or defined by the contract or by the law, *following* or *preceding* which day, act, &c., there is to be an interval of time, as in the case of notice given, the service of a writ, a promise to pay in so many days, or months, or from such a date or event and the like, by the lapse of which interval the validity of the *preceding* or *following* act, &c., is tested. In such case there is by contract or law a particular act, event, or proceeding to be *followed* or *preceded* by the required interval, qualifying it in its relation to some other act or proceeding at the other end of the interval, and qualifying it only by *preceding* or *following* it, as the service of a writ, valid or invalid by the interval between it and the return day, notice to take depositions, by the interval between it and the caption, a promise to pay, by the interval between it or the day fixed by it from which to compute the time of maturity and the demand or suit.

This class of cases is clearly within the act, because an interval is to be measured by the time between two acts, events, &c., qualifying the acts or events, in their relation to each other, and this is implied in the phraseology of the act, " where time is to be reckoned *from any day,*" &c., by force " of law or by virtue of any contract," such day shall not be included. But these cases are essentially different from that at bar, which,

like the case of the inquiry whether a person is or not twenty-one years of age, involves a *continuing* fact, qualified by the time as *concurrent* with the fact and not as *following* or *preceding* it.   One born on the 3d of October attains full age, that is, is twenty-one years old, at the expiration of the 2d, twenty-one years after, because he has had *continued* existence for the space of twenty-one years.   If, in the computation of the time, the first day of his existence is to be excluded under this section of the statute, then he has not attained his majority until he has lived twenty-one full years and one day over.   So, in the case of a contract, as an illustration of the distinction, a promise to pay, in consideration that the promisee will keep possession of my farm for one month from the 1st of October is within the statute, and the 1st day of October is to be excluded, because by the terms of the contract a day is specified, and fixed *from* which the month is to be computed.   But would a promise to pay in consideration that the promisee would keep possession of my farm *for the space of one month* in the year 1864 be within it, and therefore the *first day's possession* be excluded as the day *from* which the computation is to be made?   If so, it must be because, as the month's possession is to be computed from the *beginning* of the possession, this *beginning* must be the *act* intended by the statute and the day of that act is not to be reckoned as a part of the month's possession. With great deference we submit that this would be but little less than absurd.   That case is precisely this.   The *continued* possession for one year had its *beginning* on the 3d of October, and, in computing the *space* of this *continued* possession to find the year, the day on which it was begun and which was one day's possession followed by the 364 other days' possession, does not constitute one year's possession, because the day of the beginning of this continuous act is to be excluded !   It is much more reasonable to hold that the statute does not apply to such case because there is no day, date, or act, from which this continuous act is to measured but its beginning.   If in any view the act has application to it, it can only be by considering the act of making the tender as the one *from* which the time is to be computed.   So considered, the day on which the tender was made is to be excluded, and running back *from that day* one full year's possession is found on the 3d of October preceding.

II.   But if foreclosure was not effected before tender, the amount tendered was insufficient.   By the terms of the contract the interest was to be paid monthly.   Art. 14 of Articles of the Association.   Such contract is not usurious.   Computing the interest as payable monthly from July 1, '59, to Oct. 3, '60, during which time no interest was paid, the amount due at the time of the tender, without including fines, &c., was seven or eight dollars more than the sum tendered.   The defendants were entitled to receive the whole amount due according to the contract, although the Association were content to take less when they assigned the mortgage.

BELLOWS, J.   On this case several questions arise :

1.   Whether the plaintiff's title, as mortgagee, ceased, as against

these defendants, by a failure to render an account upon due demand made.

2. If not, did he make a valid tender of the amount due on the mortgage to the Association within the year?

3. Or, if not, will equity under the circumstances relieve him against a forfeiture?

1. The demand of an account states, that the deputy sheriff *has* in his hands an execution which he is about to levy on David Ricker's real estate in Manchester, but does not state that he *had* levied upon it.

The statute authorizes the attachment of equities of redemption. Comp. St. ch. 195, secs. 1 and 2, and provides that such creditor, or the officer serving the writ, may demand of the person holding the mortgage an account on oath of the amount due him, &c., but we think that it is only after such attachment that the demand can be made under this statute. Until that is done, the creditor has no interest in the land or lien upon it, and has, therefore, no interest in the redemption. He is, then, in no condition to require the mortgagee, under the penalty imposed by that statute, to render an account, and it would seem to follow, of course, that, in making a demand, the creditor, or officer, should set forth his title to make it; or, in other words, that he had attached, or levied upon, the land, and had thus acquired a lien upon it and a right to redeem it.

This statute is highly penal in its character, and a party ought not to lose his security unless he is brought clearly within its provisions. The authority, therefore, of the creditor to demand an account, should be set forth, and with reasonable certainty and distinctness, that the mortgagee may see that he is bound by law to *comply*; and as no such authority is disclosed in this demand, we think it is insufficient.

These views are fully recognized in *Farr* v. *Dudley*, 21 N. H. 372, where it is laid down that the attaching creditor should be held to comply with all the substantial requisitions of the statute; and for the reason that the demand did not state the time of the attachment, when an account of the amount due up to that time was called for, the demand was adjudged to be insufficient, inasmuch as it was regarded as unreasonable that the mortgagee should be compelled to search the records to ascertain that time. The doctrine of *Farr* v. *Dudley*, is also recognized in *Gilmore* v. *Gale*, 33 N. H. 410. In *Phelps* v. *Gilchrist*, 28 N. H. 266, it is held that in a written demand by a deputy sheriff, of a receipter, his authority should be disclosed, when the receipt was given to another officer.

The extension of that doctrine to the objection here that the residence of the officer was not disclosed, might also prove fatal to the demand; but of that we give no opinion. Nor is it necessary to consider whether a demand sent by mail, as this was, is sufficient, although in the case of an ordinary demand it is held not to be. *Whittier* v. *Johnson*, 38 N. H. 164, and cases cited.

Nor do we think that the objections to the demand were waived by the imperfect account rendered by the mortgagee. There might be cases where, in furtherance of justice, the law might regard a defect in the previous proceeding, as waived by entering without objection, upon the

subsequent steps, as is often held in proceedings in courts of justice; but in this case the attempt is to enforce a penalty, and the creditor may reasonably be held to a strict compliance with the requirements of the statute.  *Gilmore* v. *Gale*, 33 N. H. 418.  Notwithstanding the mortgagee, from abundant caution, or other reason, has attempted to render an account, still, as the demand does not disclose any authority to make it, we think the law will not regard the defect as waived.  Especially would this be so in equity, where it is an established principle that it will not lend its aid to enforce a penalty, or to divest an estate for breach of a condition subsequent.  *Smith* v. *Jewett*, 40 N. H. 530.

There is nothing here that shows an intent to waive the objection; nor does justice require that it be so considered; neither is there anything in the nature of an estoppel of the mortgagee; for the creditor has a knowledge of all the facts, and it is for him to decide whether he has, or has not, complied with the requirements of the statute; nor can it be said that he has been misled by the mortgagee and thereby induced to change his position.  For this view of the defendants we are referred to no adjudged cases, nor are we able to find any that sustains it.

The result is, that the plaintiff's mortgage was not discharged, as respects the defendants, by this demand for an account and the failure to render one within fifteen days; and the next question is (2), whether a valid tender of the amount due on the mortgage to the Loan and Fund Association was made; and this depends upon the questions whether the tender was sufficient in respect to *time* and *amount*.

The law provides, Comp. St. ch. 137, sec. 14, that the right of redemption may be foreclosed by entry under process of law and possession for one year, or "by peaceable entry into the mortgaged premises and continued, actual, peaceable possession thereof for the space of one year, and by publishing," &c., or by the mortgagee in possession giving notice that such possession is holden for the purpose of foreclosing the right to redeem, and by retaining actual, peaceable possession thereof for one year after such notice, and by publishing, &c.  In this case, the foreclosure set up was in the second mode, by entry on the third day of October, 1859, and possession for one year.

If, then, the day of the entry is to be excluded, it is clear that the year did not expire, at least, until the close of the third day of October, 1860; and this depends upon the construction given to the 25th section of chapter 1, of the Revised Statutes, relating to the construction of statutes.  If this space of one year is to be reckoned from the act of the entry, in the sense of the terms used in that section, then the day of that entry is to be excluded; and we think, that, by force of the law relating to foreclosures, the time is to be reckoned from the act of such entry; that is, the possession is to be one year from and after that act.

It is true that this is not stated in express terms, but it is necessarily implied, and the space of one year is to be reckoned from the entry.  So, in case the mortgagee is already in possession, he may give notice of his purpose to hold to foreclose the mortgage; and then the time is to be reckoned from the giving of such notice.

In the case of town meetings where the warrant must be posted "fif-

teen days before the day of meeting," it is decided that the time of posting is excluded.      *Osgood* v. *Blake*, 21 N. H. 550, citing *Grafton Bank* v. *Kimball*, 20 N. H. 107, as having decided the question in the same way, as was the fact, though not fully reported.

These decisions we think are decisive of the question before us. In the one case, the notice is to be posted fifteen days, and, in the other, there must be continued possession for one year; and, for aught we can see, the principle that would exclude the day of the posting, must also exclude the day of the entry; for in neither is it expressly provided that the time shall be reckoned from the day or time of the act, although in both this is necessarily implied. So it is held in respect to the service of writs and other process, when they are to be served "fourteen days before the sitting of the court," and then both days are excluded in the computation of time.

In the sale of personal property on execution, where it is provided that it shall be kept four days at least, it is held that the day of the seizure shall be excluded. See *Lefavour* v. *Bartlett*, 42 N. H. 555; *Derry Bank* v. *Webster & al.*, Rockingham County. See also *Scovill and wife* v. *Holbrook*, 22 N. H. 269. See also *Leavitt* v. *Simes*, 3 N. H. 14, where it was held, that, in the case of a promissory note payable in a given number of days, without saying more, the day of the date should be excluded.

The act referred to provides that, "When time is reckoned from any day or act done, or the time of any act done, either by force of law or by virtue of any contract hereafter made, such day, date, or the day when such act is done, shall not be included in the computation;" thus abolishing the distinction which had existed in cases where time was to be reckoned from any act done, or the time of an act, on the one hand, and date, or the day of a date on the other; and excluding, in both cases, the day from which the time was to be computed.

The purpose of this act was to establish an uniform rule of computation so far as it might be done, and the courts would be slow to engraft upon it any distinction that should tend to renew the perplexities that formerly existed.

In the very ingenious argument of the counsel for the defendants, it is contended that this case does not come within the provisions of the construction act, because the year's possession required by the act is a *continuing* fact and concurrent with the *act* of entry and not *following* it, and he likens it to the case of the computation of the age of a person, in which he contends that the day of his birth is to be included. It is quite probable that the terms of a contract or a statute may be such as to include the day of the commencement of the period to be computed; but, to receive such a construction, the language, we think, ought, at least, to be explicit, and much more so than any thing we find here.

In the second mode of foreclosing a mortgage, which is the one under consideration, there must be a peaceable entry and a continued possession for one year, and it is manifest that the time is to be computed from that entry.

That entry may have been at the commencement or near the close of a day, and there would be the same reason for excluding that portion of a day as in any other case; otherwise it might happen that the possession would actually be nearly one day short of a full year.

This view is confirmed also by the provisions made for the third mode of foreclosing mortgages, when the mortgagee is already in possession, and gives notice to the mortgagor that he holds possession for the purpose of foreclosing the mortgage; then, by retaining possession one year *after* such notice and the proper publication, a foreclosure is effected.

In this case it is clear that the time is to be reckoned from the notice, and the day when it is given must be excluded. That being the case it is not reasonable to suppose that a different mode of computation was intended in the other modes of foreclosure.

It is, of course, not very material in this, or in most other cases, whether these fractions of days are included or excluded in the computations of time; but it is extremely important that the rule should be stable and uniform, and such, obviously, was the purpose of the law in question.

The case put by the counsel, of the computation of the age of a person, is undoubtedly a strong one in illustration of his view that there may be cases that do not come within the provisions of this act. By usage the day of one's birth is so far reckoned that on that day, as the birth day, the years are understood to be completed; but at what time in that day, under our present statute, would require some consideration. But, however that may be decided, we are satisfied that the case before us comes within the act in question. The case of *Fuller* v. *Russell*, 6 Gray 128, is in accordance with these views, and is directly in point. There, in computing the three years' possession required to foreclose a mortgage, the day of the entry was excluded.

It being, then, found that the tender was made within the year, the question is whether it was sufficient in amount, or whether under the circumstances the plaintiff should be allowed to redeem.

Without stopping to inquire whether the amount tendered was eight or ten dollars less than the amount due, we think that upon the principle recognized in *Abbott* v. *Banfield*, 43 N. H. 153, this is a case for equitable relief. It appears, from the evidence, that the plaintiff tendered the sum paid by the defendants to the Association to procure an assignment of the mortgage, and which was understood to be the amount really and justly due, as shown by the books of the Association, and which the Secretary testifies was the sum claimed by it to be due, including ten dollars for the expenses of taking possession of the property for the purpose of the foreclosure, and for advertising, &c.; and that he also tendered the interest on that sum from the time of payment to the tender.

This, with the fact that at the time of the tender, which was made to one of the defendants, he did not decline it because of the amount, or claim any larger sum, makes a strong case for equitable relief within the principle of *Abbott* v. *Banfield*, and cases there cited.

It is a clear case of an attempt in good faith to pay the entire amount

of the mortgage debt under circumstances that strongly indicated the sum tendered to be the sum actually due ; and without receiving, at the time of the tender or afterwards, any intimation that more was due ; and, besides, the amount of the deficiency as now claimed is very trifling, being but little more than half of one per cent., or in all but eight or ten dollars.

Under such circumstances, and considering the intrinsic difficulty of ascertaining the exact amount due beyond the amount standing upon the books of the Association, it may well be claimed that the deficiency in the amount tendered, if any existed, was purely by mistake and accident, and that full compensation can be made. Indeed, it would seem to stand upon much the same ground as where the holder of the mortgage himself represents to the person having the equity of redemption, the amount due to be less than it actually was ; for, in this case, the amount due was computed by the defendants' assignors, entered on their books, treated as the amount due by the assignees, and the same amount with interest tendered by the plaintiff—indicating his knowledge that this was understood by the parties to be the sum due.

To allow the plaintiff's equity to be defeated by a new computation, increasing in a trifling degree the amount due, would be contrary to good conscience, and wholly inconsistent with well established doctrines of courts of equity. *Skinner* v. *Dayton*, 2 Johns. Ch. Rep. 533 ; *Baxter* v. *Lansing*, 7 Paige's Ch. 352 ; *Henry* v. *Tupper & al.*, 29 Vt., 358 ; *Reynolds* v. *Pitt*, 19 Sumner's Vesey, n. a. & b. and cases cited ; *Bracebridge* v. *Buckley*, 2 Price 200.

In this case the right of redemption would, at law, be regarded as foreclosed, if the amount tendered was less than the amount due ; but it was by entry, possession, and notice, without process, and not by judgment at law ; and we think a bill in equity would lie to relieve against the forfeiture, upon the ground of fraud, accident, or mistake, the same as if the equity of redemption had not been so foreclosed, although in cases where the relief must depend upon the sound discretion of the chancellor, the fact of such foreclosure would be considered.

Before the statutes allowing the redemption of mortgages after condition broken, and empowering courts of law to chancer them, the right of redemption at law was gone upon the expiration of the time limited without performance of the conditions ; and yet courts of equity have been for a long time constantly in the habit of furnishing relief in such cases. 2 Story's Equity Pl. sec. 1013. And, in respect to foreclosures under our statutes, courts of law in this State have acted upon equitable principles and held such foreclosures to be waived or invalid when the mortgagee had afterwards received all or even part of the mortgage debt. *Batchelder* v. *Robinson*, 6 N. H. 12 ; *Converse* v. *Cook & al.*, 8 Vt., 164 ; *Deming* v. *Comings*, 11 N. H. 483. So, in the latter case, it was held, that the equity would be kept open by an assignment just before the expiration of the right to redeem, with a view to prevent a redemption ; or even if so assigned without fraud, the equity would be kept open until the mortgagor had reasonable time to find the assignee. So when the mortgagee, being summoned as the trustee of the mortga-

gor, brought forward the mortgage claim as an unpaid debt.    *Crane* v. *Claremont Iron Foundry Co.;* cited in *McNeil & al.* v. *Call*, 19 N. H. 416.    So in *Hall* v. *Cushman*, 14 N. H. 171, where upon inquiry by the second mortgagee of the first mortgagee, as to the amount of his claim, he was told by the latter that he did not expect to look to the mortgage for indemnity, but if there should be a small balance he would notify him; and afterwards, without giving any other notice than the publication in the newspaper, he entered and foreclosed his mortgage; and it was held, on petition to redeem, that, as to the second mortgagee, this foreclosure was invalid.

In *McNeil & al.* v. *Call*, 19 N. H. 402, which was a bill in equity to redeem, and it appeared that the agent of the mortgagee who was in possession for the purpose of foreclosing the equity, agreed verbally with the mortgagor that if he would pay the debt at a certain time subsequent to the expiration of the year, no advantage should be taken of the foreclosure, and the mortgagor, at the time fixed, tendered the amount, it was decided that the forfeiture was waived and the foreclosure opened.

The same doctrine was held in *Quint* v. *Little*, 4 Greenl. Rep. 495; which was also a bill in equity, but the agreement was in writing.    See, also, *Pierson* v. *Noyes*, 15 Vermont 93.    So it is held where the mortgagee has neglected or refused, on demand, to render an account of the amount due.    *Wendell* v. *N. H. Bank & al.*, 9 N. H. 404; *Bellows* v. *Stone & al.*, 14 N. H. 175.

These authorities show that there is nothing in the character of a foreclosure, under our statute, by possession and notice, that stands in the way of relief in equity upon the ground of fraud, or accident, against the forfeiture, and we are satisfied that the plaintiff is entitled to the relief he seeks.

Should the exact amount due hereafter become material in respect to costs, although it does not appear that the amount tendered is brought into court, an account may be taken for that purpose, and also of the rents and profits unless rendered unnecessary by the payment of the plaintiff's mortgage debts, which the defendants, as it would seem, have the right to make, and which, in their answer, they propose to do, if the plaintiff is found entitled to a decree.

No decree, however, that the defendants may redeem, can be made in this suit, but it is presumed that the parties, with the aid of the suggestions now made, will adjust the remaining questions.

If not there must be a decree for the plaintiff.